**Anthony H. DYE, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A04–1011–CR–728.**

Court of Appeals of Indiana.

Nov. 10, 2011.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Anthony Dye appeals following his guilty plea to Class B felony Unlawful Possession of a Firearm by a Serious Violent Felon [1] ("SVF") and a jury's finding that he is a Habitual Offender,[2] by virtue of which his twenty-year SVF sentence was enhanced by thirty years. Dye raises the following four issues, which we restate and reorder as follows:

I. Whether the trial court erred in denying Dye's motion to dismiss the habitual offender charge;

II. Whether the trial court erred in denying Dye's *Batson* challenge that the State impermissibly used peremptory challenges to exclude members of an identifiable racial group from the jury;

III. Whether the trial court erred in denying Dye's mistrial motion; and

IV. Whether Dye's sentence is inappropriately harsh.

We affirm.

1. Ind.Code § 35–47–4–5(c) (2006).

2. Ind.Code § 35–50–2–8(a) (2006).

3. " 'The circumstances, facts and declarations which grow out of the main fact, are contemporaneous with and serve to illustrate its character, are part of the *res gestae*.' " *Johnson v. Zimmerman,* 42 Ind.App. 165, 176, 84 N.E. 541, 545 (1908) (citation omitted). Historically, the concept of *res gestae* has been applied mainly in the evidentiary context,

## FACTS AND PROCEDURAL HISTORY

On March 18, 2007, Dye knowingly possessed a firearm having previously been convicted, on September 10, 1998, of attempted battery with a deadly weapon. On May 1, 2007, the State charged Dye with SVF and with being a habitual offender. On September 2, 2009, the State amended the habitual offender charge, which was based on an April 8, 1993, conviction for forgery and a September 10, 1998, conviction for possession of a handgun within 1000 feet of a school. The attempted battery and possession of a handgun within 1000 feet of a school charges were filed in cause number 20C01–9703–CF–18 ("Cause 18") and apparently arose out of the same incident, and Dye pled guilty to them on the same date. In exchange for his guilty pleas, the State dismissed a Class A felony attempted murder charge, also filed in Cause 18 and apparently arising out of the same incident.

On July 6, 2010, Dye pled guilty to the SVF charge and moved to dismiss the habitual offender charge on the basis that use of the attempted battery conviction to support the SVF charge and use of the possession of a handgun within 1000 feet of a school conviction to support the habitual offender charge constituted an impermissible double enhancement because the convictions arose out of the same *res gestae*.[3] On July 21, 2010, the trial court denied

where statements that were part of the *res gestae* of the litigated event were admissible as an exception to the hearsay rule. *See, e.g., Baker v. Gausin,* 76 Ind. 317, 322 (1881) (concluding that testimony from witness to confrontation regarding statements of one of the combatants was admissible as *res gestae* ). Here, Dye seems to be using the concept as another way of saying that the two convictions in question arose from acts that were part of the same incident.

Dye's motion to dismiss and set the matter for jury trial.

On October 6, 2010, during voir dire, the State peremptorily struck potential juror Campbell, which prompted a *Batson* challenge from Dye, who claimed that Campbell had been struck due to her race. The prosecutor responded that he had struck Campbell because her husband had been convicted of a crime and that she might be unduly sympathetic to Dye. The trial court found the State's reason for striking Campbell to be race-neutral and denied Dye's *Batson* challenge.

During trial, Elkhart Police Detective Joel Borden testified regarding Dye's 1993 conviction for forgery. During Detective Borden's testimony, the following exchanges took place:

Q. What was the involvement between [accomplice] Deny Gadson and Anthony Dye?

A. Basically, the two of them—Mr. Dye forged—excuse me—stole some checks from his brother, forged his brother's name, and then the majority of those he and Mr. Gadson would go to cash.

＊　　＊　　＊

Q. ... Did you have the opportunity to the discuss this case with Mr. Dye?

A. Yes, I did.

...

Q. And what did he tell you regarding his involvement?

A. He confessed to his involvement with this incident, both getting the checks, stealing them from his brother, I believe it was Maurice Dye. And that he filled out on the majority of these, as I recall, he had filled out the front of the checks, signed his brother's name, and then made them payable to Mr. Gadson, and then they would go and cash these.

Tr. pp. 426, 428. Dye made no contemporaneous objection to this testimony.

Later, State's Exhibit 2 was used to prove Dye's second prior felony, possession of a handgun within 1000 feet of a school in Cause 18. Dye and the State had previously agreed that Exhibit 2 would be redacted to remove all reference to the attempted murder charge in Cause 18. The exhibit as initially admitted, however, contained a copy of the plea agreement from Cause 18 that was improperly redacted such that it still indicated that Dye had been charged with attempted murder at one point. Dye moved for a mistrial, which motion the trial court denied, and declined the trial court's offer to admonish the jury.

Following trial, the jury found Dye to be a habitual offender. On November 1, 2010, the trial court sentenced Dye to twenty years of incarceration for SVF, enhanced the sentence thirty years by virtue of his status as a habitual offender, and suspended fifteen years of the sentence to probation.

## DISCUSSION AND DECISION

### I. Enhancement of Current Crimes and Sentences with Prior Convictions

Here, the State used one prior felony conviction to support Dye's SVF conviction and another prior felony conviction that apparently arose out of the same incident to partially support a habitual offender finding. The Indiana Supreme Court has held that "a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute by proof of the same felony used to establish that the defendant was a 'serious violent felon.'" *Mills v. State*, 868 N.E.2d 446, 452 (Ind.2007).

Here, however, we have two different convictions. Dye informs us of no Indiana case, and our research has uncovered none, in which using two different convictions for two separate enhancement purposes has ever been found problematic. Indeed, this court has addressed the use of different convictions in precisely the same circumstances as here and has concluded that such use is acceptable. In *Lewis v. State,* 769 N.E.2d 243, 249 (Ind.Ct.App. 2002), *aff'd on reh'g,* 774 N.E.2d 941, *trans. denied,* we held that "in circumstances in which the felony convictions used to classify the defendant as a serious violent felon and to classify him as an habitual offender are different, there is no impediment to imposing an habitual offender enhancement upon a sentence for unlawful possession by a SVF."

▮▮ Dye does not acknowledge the *Lewis* holding, much less argue that it is incorrect. What Dye does urge us to do, however, is create an exception to *Lewis* for convictions that, while distinct, arise out of the same *res gestae*. Analogizing with *Mills* and other "double enhancement" cases, Dye argues that enhancement using two convictions arising out of the same *res gestae* amounts to the same thing as using the same conviction twice. We decline to so hold. Unless and until the Indiana Supreme Court holds that two distinct convictions arising out of the same *res gestae* cannot be used as they were here, we shall adhere to the general principle that double enhancement challenges only arise when the same conviction is used twice.

## II. *Batson* Challenge[4]

▮▮ Dye contends that the State peremptorily struck Campbell on the improper basis that she was the only African-American in the jury pool.

The exercise of racially discriminatory peremptory challenges is constitutionally impermissible. *Wright v. State,* 690 N.E.2d 1098, 1104 (Ind.1997). In order to establish a prima facie case of purposeful discrimination in the selection of a jury, a defendant must show: (1) that the prosecutor has exercised peremptory challenges to remove members of a cognizable racial group from the venire; and (2) that the facts and circumstances of the defendant's case raise an inference that the prosecutor used that practice to exclude venire persons from the jury due to their race. *Bradley v. State,* 649 N.E.2d 100, 105 (Ind.1995) (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). Once a prima facie showing has been established, the burden shifts to the State to present an explanation for challenging such jurors. *Batson,* 476 U.S. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69. The trial court then has a duty to determine whether the defendant has established purposeful discrimination. *Id.* at 98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court refined the test for determining whether a juror has been struck for a reason violative of *Batson.* The Court declared that the race-neutral explanation must be more than a mere denial of improper motive, but it need not be "persuasive, or even plausible." *Id.* at 768, 115 S.Ct. 1769. " '[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.* (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)).

---

4. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

*McCormick v. State,* 803 N.E.2d 1108, 1110–11 (Ind.2004).

■ Here, Dye has failed to make a prima facie case of racially discriminatory use of peremptory challenges to prospective jurors. There is no clear indication in the record that prospective juror Campbell was a member of a cognizable racial group and that, if she was, she was the only one. In any event, the State offered a sufficient race-neutral reason for Campbell's strike. The prosecutor stated on the record that the reason he was striking Campbell was that, as the wife of a person convicted of a crime, he felt that she would be sympathetic to Dye's argument that he had changed in the time since his prior convictions, essentially a jury nullification argument related to the habitual offender charge. Because there is no discriminatory intent apparent from the face of this explanation, it is sufficient to survive a *Batson* challenge, and the trial court did not err in denying it.

### III. Mistrial Motion

■ Dye contends that the trial court abused its discretion in denying his mistrial motion, which was based on (1) Detective Borden's testimony that Dye confessed to him that he had stolen multiple checks from his brother and (2) the improperly-redacted exhibit shown to the jury informing them that Dye had once had an attempted murder charge against him.

We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in "the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State,* 814 N.E.2d 253, 260 (Ind.2004). A mistrial is appropriate only when the questioned conduct is "so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he

should not have been subjected." *Mickens v. State,* 742 N.E.2d 927, 929 (Ind. 2001) (quoting *Gregory v. State,* 540 N.E.2d 585, 589 (Ind.1989)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id.*

*Pittman v. State,* 885 N.E.2d 1246, 1255 (Ind.2008).

■ Dye has waived any challenge to Detective Borden's testimony for failing to lodge a contemporaneous objection, much less request a mistrial. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State,* 821 N.E.2d 409, 412 (Ind.Ct.App.2005), *trans. denied* (citation omitted).

■ Dye has also waived any challenge he might have had to the incident involving the improperly-redacted plea agreement. First, the record indicates that the incomplete redaction of the plea agreement was as much Dye's fault as the State's, as both sides inadvertently missed the reference to the attempted murder charge. Consequently, any error that might have occurred was invited. " 'The doctrine of invited error is grounded in estoppel.' " *Wright v. State,* 828 N.E.2d 904, 907 (Ind.2005) (quoting *Witte v. Mundy,* 820 N.E.2d 128, 133 (Ind.2005)). "Under this doctrine, 'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.' " *Id.* (quoting *Witte,* 820 N.E.2d at 133–34).

■ Moreover, even to the extent that the improper redaction might have been due to State misconduct, Dye waived the claim for failing to request an admon-

ishment. "When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind.2006) (citing *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind.2004); *Brewer v. State*, 605 N.E.2d 181, 182 (Ind. 1993)). "If the party is not satisfied with the admonishment, then he or she should move for mistrial." *Id.* (citing *Dumas*, 803 N.E.2d at 1117). "Failure to request an admonishment or to move for mistrial results in waiver." *Id.* (citing *Dumas*, 803 N.E.2d at 1117). Because Dye failed to request an admonishment and, indeed, refused the trial court's offer to give one, he has waived this issue for appellate review.

## IV. Appropriateness of Dye's Sentence

■ Finally, we conclude that Dye has failed to establish that his sentence was inappropriately harsh. As previously mentioned, the trial court sentenced Dye to twenty years for SVF, enhanced his sentence by thirty years by virtue of his habitual offender status, and suspended fifteen years of incarceration to probation. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct.App.2006) (citations and quotation marks omitted), *trans. denied.*

■ The nature of Dye's crime was not that of mere benign possession of a handgun. According to Dye, he was called by his son for assistance in a confrontation with two armed men who had previously robbed Dye at gunpoint. The result of the ensuing battle was the death of Dye's son and Dye himself being shot twice. Had Dye simply contacted the authorities instead of seeking to address the situation himself, perhaps his son would still be alive. Moreover, the record indicates that Dye's motives in coming to his son's aid were not entirely noble, as the record indicates that he intended to rob at least one of the two armed men in retaliation for the earlier robbery. In light of this, it is worth noting that the facts of the incident would have, at the very least, supported a charge of attempted Class A felony robbery, for which Dye could have received a base sentence of up to fifty years of incarceration. *See* Ind.Code § 35–42–5–1 ("A person who knowingly or intentionally takes property from another person or from the presence of another person ... by using or threatening the use of force on any person; or ... by putting any person in fear ... commits robbery, ... a Class A felony if it results in serious bodily injury to any person other than a defendant."). The nature of Dye's offense justifies the sentence he received.

As for Dye's character, we need look no further than his extensive criminal history. Born in 1970, Dye was first adjudged a juvenile delinquent in 1987, for committing what would be Class D felony theft. As an adult, Dye has been convicted of a total of seventeen prior misdemeanors and three prior felonies. Dye has misdemeanor convictions for five counts of driving while suspended, three counts of fleeing police, two counts of driving while suspended with a prior conviction, illegal consumption of alcohol by a minor, failure of duty at a property accident, resisting law enforcement, possession of a legend drug, criminal mischief, marijuana possession, and domestic battery. Dye has previous felony convictions for Class C felony for-

gery, Class C felony illegal possession of a firearm within 1000 feet of a school, and Class C felony attempted battery. In addition, Dye has had probation revoked once and has been held in contempt and incarcerated for non-support. Despite Dye's numerous contacts with the criminal justice system, criminal convictions, and incarcerations, he has chosen not to reform himself. In light of the nature of Dye's offense and his character, his fifty-year sentence with fifteen years suspended to probation is appropriate.

We affirm the judgment of the trial court.

BAKER, J., concurs.

MAY, J., dissents with opinion.

MAY, Judge, dissenting.

I would reverse Dye's adjudication as an habitual offender because I believe it was an improper double enhancement. Dye's conviction of possession of a handgun by a serious violent felon ("SVF") was premised on a 1998 conviction of attempted battery by means of a deadly weapon. His habitual offender adjudication rests on another 1998 conviction, of possession of a handgun within a thousand feet of a school, which arose out of the same incident as did the attempted battery conviction on which the SVF count was based. I must therefore respectfully dissent.

The State may seek to have a person sentenced as an habitual offender by alleging the person has accumulated two prior unrelated felony convictions. Ind.Code § 35–50–2–8. One meaning of the requirement that the prior felonies be "unrelated" is the predicate felony is not part of the *res gestae*[5] of the principal offense. *Beldon v. State*, 926 N.E.2d 480, 484 (Ind. 2010). *And see Erickson v. State*, 438 N.E.2d 269, 273 (Ind.1982) ("unrelated felony" means a felony not related to the instant felony in the sense that it is not connected to it as part of the *res gestae* of the instant crime).

As the two predicate unrelated felony convictions for its habitual offender allegation, the State relied on Dye's convictions of forgery and possession of a firearm within one thousand feet of a school. Those offenses were not part of the same *res gestae*, so they appear to comport with the statutory requirement for unrelated felonies.

However, the trial court attached the habitual offender enhancement to Dye's SVF conviction. The prior offense used to establish Dye is a serious violent felon for the SVF conviction was Dye's 1998 conviction of attempted battery by means of a deadly weapon. That conviction *was* part of the same *res gestae* as Dye's 1998 conviction of possession of a firearm within one thousand feet of a school, which was used to support the habitual offender count.

Our Indiana Supreme Court has held a person convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence for that crime enhanced under the general habitual offender statute by proof of the same felony used to establish that the person was a serious violent felon. *Mills v. State*, 868 N.E.2d 446, 447 (Ind.2007).[6] The State

---

5. The term *"res gestae"*—from the Latin meaning "things done"—includes: (1) circumstances, facts, and declarations incidental to the main fact or transaction, and necessary to illustrate its character, and (2) acts, words, and declarations that are so closely connected to the main fact or transaction as to be a part of it. 29A Am.Jur.2d *Evidence* § 874.

6. The *Mills* Court did not reverse on that ground; it determined when Mills pled guilty he relinquished the right to challenge his sentence as an impermissible double enhancement. 868 N.E.2d at 451–52.

therefore could not have relied on Dye's 1998 conviction of attempted battery by means of a deadly weapon as a predicate offense for the habitual offender adjudication, as that was the felony on which it based the SVF count. *See id.*

Instead, the State relied on another charge that arose out of the same incident as the felony on which the SVF count was premised—Dye's 1998 conviction of possession of a firearm within one thousand feet of a school. Dye argues two offenses that are part of the same *res gestae* should be considered the "same felony" for habitual offender and SVF double enhancement purposes. I would find they are.

The *Mills* Court noted the general rule that "absent explicit legislative direction," a sentence imposed following conviction under a "progressive penalty statute"[7] may not be increased further under either the general habitual offender statute or a specialized habitual offender statute. *Id.* at 449.

> Thus, absent express clarification from our legislature or our supreme court, we believe it would contradict the Rule of Lenity as applied in *Ross* [*v. State*, 729 N.E.2d 113 (Ind.2000)[8]] and place form over substance, to hold the State may enhance a defendant's sentence for being a serious violent felon in possession of a firearm under the general habitual offender statute by using a conviction that was also used to prove the defen-

dant was a serious violent felon, but that the State may not enhance the sentence of one convicted of carrying a handgun without a license by proof of his or her felony status.

*Id.* at 450 (quoting *Conrad v. State*, 747 N.E.2d 575, 594–95 (Ind.Ct.App.2001), *trans. denied* ) (footnote added). *Cf. Lewis v. State*, 769 N.E.2d 243, 249 (Ind.Ct. App.2002), *on reh'g*, 774 N.E.2d 941 (Ind. Ct.App.2002) (when felony convictions used to classify the defendant as a serious violent felon and to classify him as an habitual offender are different, there is no impediment to imposing an habitual offender enhancement on a sentence for unlawful possession by a SVF).

In *Lewis*, the offense on which the SVF conviction was based was not part of the same *res gestae* as the offenses on which the habitual offender was based. We distinguished *Conrad*.

> Subsequently, in [*Conrad* ] this court examined the effect of *Ross* on an habitual offender enhancement of a sentence for unlawful possession by a SVF. The defendant in *Conrad* was convicted of unlawful possession by a SVF, and his sentence was enhanced due to an habitual offender determination. He was classified as a "serious violent felon" due to 1978 convictions of rape, confinement, criminal deviate conduct, and robbery. He was adjudged to be an habitual of-

---

**7.** A "progressive penalty statute" is one where the seriousness of a particular charge can be elevated if the person charged has previously been convicted of a particular offense. For example, Ind.Code § 35–48–4–11 provides Class A misdemeanor possession of marijuana can be charged as a Class D felony if the person charged has a prior conviction of an offense involving marijuana. *State v. Downey*, 770 N.E.2d 794, 796 (Ind.2002).

**8.** The rule of lenity was described in *Ross:*

> [W]hen a conflict arises over the question of imposing a harsher penalty or a more

lenient one, the longstanding Rule of Lenity should be applied. "It is a familiar principle that statutes which are criminal or penal in their nature or which are in derogation of a common-law right must be strictly construed." *State v. Pence*, 173 Ind. 99, 104, 89 N.E. 488, 490 (1909). Also, "where there is ambiguity it must be resolved against the penalty. . . ." *Dowd v. Sullivan*, 217 Ind. 196, 203, 27 N.E.2d 82, 85 (1940). *Ross v. State*, 729 N.E.2d 113, 116 (Ind.2000), *superseded by statute on other grounds as stated in Mills v. State*, 868 N.E.2d 446 (Ind. 2007).

fender on the basis of the 1978 convictions and a 1966 conviction for burglary. Acknowledging that a different statute was considered in *Ross,* we nonetheless applied the principles announced in *Ross* and determined that

> we are faced with an ambiguity in potential punishments as between the specific serious violent felon statute and the general habitual offender statute that must be resolved against the penalty. Thus, absent express clarification from our legislature or our supreme court, we believe it would contradict the Rule of Lenity as applied in *Ross,* and place form over substance, to hold the State may enhance a defendant's sentence for being a serious violent felon in possession of a firearm under the general habitual offender statute *by using a conviction that was also used to prove the defendant was a serious violent felon* ....

*Conrad,* 747 N.E.2d at 594–95 (emphasis added). The holding in *Conrad* was driven by the fact that the defendant's 1978 convictions were used to classify him both as a "serious violent felon" and as an habitual offender. *See also id.* at 595 ("We, therefore, hold that a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute *by proof of the same felony used to establish that the defendant was a 'serious violent felon.'*") (emphasis added). That is not the situation we have here. In this case, Lewis was classified as a "serious violent felon" due to a 1987 felony conviction for criminal confinement. He was adjudged an habitual offender on the basis of a 1994 felony conviction for dealing in a sawed off shotgun and 1998 felony convictions for residential entry and criminal recklessness.

769 N.E.2d at 248. *And see generally* Cynthia L. Sletto, Annotation, *Chronological or procedural sequence of former convictions as affecting enhancement of penalty under habitual offender statutes,* 7 A.L.R.5th 263 (1992).

While Dye's SVF count was not based on a "progressive penalty statute," the *Mills* and *Conrad* reasoning is instructive. I believe the majority's result "contradict[s] the Rule of Lenity ... and place[s] form over substance," *Mills,* 868 N.E.2d at 450, to the extent it holds two offenses that are so related they could not be used together for an habitual offender enhancement are, at the same time, so *unrelated* that they may support a double enhancement in the form of an SVF count and an habitual offender enhancement. *See Beldon,* 926 N.E.2d at 484 (one meaning of the requirement that the prior felonies be "unrelated" for habitual offender purposes is that the predicate felony is not part of the *res gestae* of the principal offense). The State therefore should not be permitted to support Dye's habitual offender finding with a conviction that arose out of the same *res gestae* that was the source of the conviction used to prove Dye was a serious violent felon.

In a decision addressing double jeopardy, our Indiana Supreme Court noted "the category described by Justice Sullivan as '[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.'" *Guyton v. State,* 771 N.E.2d 1141, 1143 (Ind.2002) (quoting *Richardson v. State,* 717 N.E.2d 32, 56 (Ind.1999) (Sullivan, J., concurring)). It is apparent to me that Dye was subjected to an enhancement that "was imposed for the very same behavior or harm" as another crime for which Dye was convicted and punished.

This amounts to an impermissible double enhancement, and I would accordingly reverse the denial of Dye's motion to dismiss the habitual offender enhancement.