ATTORNEY FOR APPELLANT
Kenneth R. Martin
Goshen, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana

In the
Indiana Supreme Court

**FILED**
Jul 31 2012, 8:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 20S04-1201-CR-5

ANTHONY H. DYE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Elkhart Superior Court, No. 20D01-0705-FB-15
The Honorable Evan S. Roberts, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 20A04-1011-CR-728

**July 31, 2012**

**Sullivan, Justice.**

Anthony Dye was convicted of unlawful possession of a firearm by a serious violent felon ("SVF") and found to be a habitual offender. We hold that this constituted an impermissible double enhancement and therefore vacate the habitual-offender enhancement. We affirm his conviction of unlawful possession of a firearm by an SVF and his sentence for that offense.

## Background

Anthony H. Dye's conviction in the present case arose out of the same underlying facts as Coleman v. State, 946 N.E.2d 1160 (Ind. 2011). On March 18, 2007, Dye received a frantic phone call from his 20-year-old son, Jermaine Jackson, indicating that a person who allegedly had robbed Dye several months beforehand was at Tyrus Coleman's music studio. Dye headed toward Coleman's music studio armed with a 9mm Glock pistol he apparently had obtained after being robbed. Meanwhile, tensions escalated at the studio when Jermaine, who was armed, attempted to force his way into the studio; Coleman armed himself and began pacing in front of his studio after his efforts at calming Jermaine failed. A few minutes later, Dye entered Coleman's yard with his pistol at his side and walked over to where Jermaine and Coleman were standing. As Dye approached, Coleman shot him twice. At that point, Jermaine pointed his handgun at Coleman, and when Coleman turned and saw this he shot Jermaine. Dye survived his injuries; Jermaine did not.

On May 1, 2007, the State charged Dye in Elkhart Superior Court with one count of unlawful possession of a firearm by a serious violent felon ("SVF"),[1] Ind. Code § 35-47-4-5(c) (2008). The SVF statute makes it a Class B felony for a person who previously has been convicted of an enumerated "serious violent felony" to possess a firearm. Id. § 35-47-4-5(b) & (c). To prove Dye's SVF status, the State used a 1998 conviction for attempted battery with a deadly weapon. See id. § 35-47-4-5(a)(2) & (b)(4)(C). The State also sought to have Dye's sentence enhanced under the habitual offender statute, which provides that the sentence of a person convicted of a felony can be enhanced by up to 30 years if he or she previously has been convicted of two unrelated felonies. Id. § 35-50-2-8. And to prove Dye's habitual-offender status, the State used a 1998 conviction for possession of a handgun within 1,000 feet of a school and a 1993 conviction for forgery. See id. § 35-50-2-8(c).

Dye pled guilty to unlawful possession of a firearm by an SVF. At the same time, he filed a motion to dismiss the habitual-offender allegation, contending that enhancing his sentence

---

[1] Tyrus Coleman was acquitted of murder with respect to Jermaine Jackson, and, after a second trial, we affirmed his conviction for attempted murder with respect to Dye. Coleman, 946 N.E.2d at 1163-64, 1171.

2

under the habitual offender statute would constitute an impermissible "double enhancement." The trial court denied the motion and scheduled a jury trial on the habitual-offender allegation.

On October 5, 2010, Dye's two-day jury trial commenced. During voir dire, Dye raised an objection under Batson v. Kentucky, 476 U.S. 79 (1986), to the State's peremptory strike of a prospective juror, which the trial court denied. Later, the trial court denied Dye's motion for a mistrial, which he had requested after certain evidence had been presented. The jury found that Dye was a habitual offender. The trial court sentenced him to the maximum 20 years' imprisonment on the SVF conviction, enhanced by 30 years due to his status as a habitual offender. The court suspended 15 years to probation, for an executed term of 35 years.

Dye raised four issues on appeal, all of which were rejected by the Court of Appeals in a 2-1 opinion. Dye v. State, 956 N.E.2d 1165 (Ind. Ct. App. 2011). First, the court held that the double enhancement was permissible. Id. at 1169-70. Second, it rejected Dye's Batson challenge on grounds that he had not made a prima facie showing of discrimination and, in any event, that the State had offered a sufficient race-neutral reason. Id. at 1170-71. Third, it held that he had waived review of his claim that the trial court erred in denying his motion for a mistrial. Id. at 1171-72. Lastly, the court held that Dye's 50-year sentence with 15 years suspended was appropriate. Id. at 1172-73. Judge May dissented, agreeing with Dye that he had been subject to an impermissible double enhancement. Id. at 1173-76 (May, J., dissenting).

Dye sought, and we granted, transfer, Dye v. State, 963 N.E.2d 1115 (Ind. 2012) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

**Discussion**

**I**

Dye maintains that tacking the habitual-offender enhancement on to the sentence for unlawful possession of a firearm by an SVF constitutes an impermissible double enhancement. This case is yet another chapter in the ongoing dialogue among this Court, the Court of Appeals,

and the Legislature concerning multiple sentencing enhancements for recidivist offenders. A brief review of this dialogue is helpful in resolving Dye's claim.

It has long been established that double enhancements are not permissible unless there is explicit legislative direction authorizing them. E.g., Beldon v. State, 926 N.E.2d 480, 483-84 (Ind. 2010); Breaston v. State, 907 N.E.2d 992, 995 (Ind. 2009); Mills v. State, 868 N.E.2d 446, 449 (Ind. 2007); State v. Downey, 770 N.E.2d 794, 796 (Ind. 2002); Ross v. State, 729 N.E.2d 113, 116-17 (Ind. 2000), adopted by statute, Pub. L. No. 166-2001, § 3, 2001 Ind. Acts 1074, 1077 (codified as amended at Ind. Code § 35-50-2-8(b)(1) (2008)); Freeman v. State, 658 N.E.2d 68, 70-71 (Ind. 1995), superseded, Pub. L. No. 96-1996, § 8, 1996 Ind. Acts 1725, 1731 (codified as amended at Ind. Code § 35-50-2-10 (2008)); Devore v. State, 657 N.E.2d 740, 742 (Ind. 1995), superseded, Pub. L. No. 96-1996, § 8, 1996 Ind. Acts 1725, 1731 (codified as amended at Ind. Code § 35-50-2-10 (2008)); Stanek v. State, 603 N.E.2d 152, 153-54 (Ind. 1992). But double enhancements are permissible when there is explicit legislative direction authorizing them. See, e.g., Beldon, 926 N.E.2d at 483-84; Downey, 770 N.E.2d at 798. Whether a particular double enhancement is permissible, therefore, is a matter of statutory interpretation. E.g., Nicoson v. State, 938 N.E.2d 660, 663 (Ind. 2010).

There are three types of statutes authorizing enhanced sentences for recidivist offenders: the general habitual offender statute, specialized habitual offender statutes, and progressive-penalty statutes. Downey, 770 N.E.2d at 795-96. The general habitual offender statute, Ind. Code § 35-50-2-8 (2008), authorizes a sentencing enhancement of up to 30 years where the defendant has been convicted of three "unrelated" felonies. Downey, 770 N.E.2d at 795. Specialized habitual offender statutes authorize sentencing enhancements where the defendant has been convicted of a certain number of similar offenses. Id. at 795-96; see, e.g., Ind. Code § 35-50-2-10 (2008) (habitual substance offenders); id. § 35-50-2-14 (repeat sex offenders); Ind. Code § 9-30-10-4 (2010) (habitual traffic violators). And progressive-penalty statutes, which are the most specialized, elevate the level of an offense (with a correspondingly enhanced sentence) where the defendant previously has been convicted of a particular offense. Downey, 770 N.E.2d at 796; see, e.g., Ind. Code § 35-48-4-11 (2008) (misdemeanor possession of marijuana elevated to felony if defendant has prior marijuana conviction); id. § 35-47-2-23(c)(2) (misdemeanor carrying

4

handgun without a license elevated to felony if defendant has specific prior convictions); Ind. Code §§ 9-30-10-16 & -17 (2010) (Class D felony driving while privileges are suspended elevated to Class C felony if defendant has prior conviction for driving while suspended); id. §§ 9-30-5-2 & -3 (misdemeanor OWI elevated to felony if defendant has prior OWI conviction). Double-enhancement issues arise where more than one of these statutes is applied to the defendant at the same time. See, e.g., Downey, 770 N.E.2d at 795-98.

The general rule is that, "absent explicit legislative direction, a sentence imposed following conviction under a progressive penalty statute may not be increased further under either the general habitual offender statute or a specialized habitual offender statute." Id. at 796 (emphasis in original). Compare Ross, 729 N.E.2d at 115-17 (holding that defendant's sentence for carrying a handgun without a license could not be enhanced under the general habitual offender statute because the conviction had already been elevated from a misdemeanor to a felony on the basis of defendant's prior conviction), with Beldon, 926 N.E.2d at 483-84 (holding that defendant's conviction for felony OWI, which was elevated to a felony due to a prior OWI conviction, could be further enhanced under the habitual substance offender statute because that statute included the requisite explicit legislative direction). Similarly, a conviction under a specialized habitual offender statute cannot be further enhanced under the general habitual offender statute in the absence of explicit legislative direction. See Stanek, 603 N.E.2d at 153-54 (holding that defendant's sentence for operating a vehicle after privileges had been suspended for life could not have his sentence enhanced under the general habitual offender statute because his conviction had already been enhanced to a felony on the basis of his prior driving-while-suspended convictions).

In applying the general rule against double enhancements, we look first to determine whether the defendant's underlying conviction is pursuant to a progressive-penalty scheme or a specialized habitual-offender scheme. E.g., Ross, 729 N.E.2d at 116; Stanek, 603 N.E.2d at 153-54. If not, then there is no double-enhancement problem. Haymaker v. State, 667 N.E.2d 1113, 1115 (Ind. 1996). But if so, then the general rule against double enhancements is triggered and we will invalidate a double enhancement unless the language of the relevant statute possesses the requisite "explicit legislative direction" to impose a double enhancement. Beldon, 926 N.E.2d at 483-84; Downey, 770 N.E.2d at 798; Ross, 729 N.E.2d at 116; Stanek, 603 N.E.2d at 153-54.

Applying this analysis here, Dye's habitual-offender enhancement violated the rule against double enhancements. First, the SVF statute under which Dye was convicted is a progressive-penalty statute. Mills, 868 N.E.2d at 449[2]; Conrad v. State, 747 N.E.2d 575, 594 (Ind. Ct. App. 2001), trans. denied; see also Beldon, 926 N.E.2d at 483 ("In Mills, the initial charge had been elevated using a progressive penalty statute." (citation omitted)).

Second, the general habitual offender statute does not include explicit legislative direction indicating that a double enhancement is proper here. Mills held that the general rule against double enhancements remains intact and that a double enhancement is improper where the underlying conviction is for unlawful possession of a firearm by an SVF. 868 N.E.2d at 452; see also Beldon, 926 N.E.2d at 484 ("Mills made clear that 'the general rule against double enhancements "absent explicit legislative direction"' remains intact. As the Legislature had provided no such direction to the contrary, the underlying elevated conviction in that case could not be further enhanced by the general habitual offender statute." (internal citation omitted)).

We conclude that the trial court erred in denying Dye's motion to dismiss the habitual-offender allegation. We thus vacate the 30-year enhancement that the trial court imposed under the general habitual offender statute.

## II

Dye also claims that the trial court erred in denying his Batson challenge. But, because he pled guilty to unlawful possession of a firearm by an SVF and because the only issue tried to the jury was the habitual-offender allegation, our conclusion that he was subject to an impermissible double enhancement renders his Batson claim moot. Similarly, his claim that the trial court

---

[2] While Mills analyzes in some detail the predicate offenses supporting the defendant's statuses as an SVF and a habitual offender, 868 N.E.2d at 450, 452, that analysis was unnecessary. The holdings in Mills that the general rule against double enhancements remains intact, id. at 452, and that a sentence under the SVF statute (a progressive-penalty statute) could not be further enhanced under the general habitual offender statute, id. at 449-50, 452, were sufficient to dispose of the claims in that case.

erred in denying his motion for a mistrial is also moot. The opinion of the Court of Appeals on these issues is vacated. App. R. 58(A).

## III

Not content with having his sentence reduced by 30 years, Dye contends that the statutory maximum 20-year sentence that the trial court imposed for his underlying conviction is inappropriate. The Court of Appeals held that Dye's original sentence of 35 years executed with 15 years of probation was appropriate in light of the nature of the crime and Dye's character. Dye, 956 N.E.2d at 1172-73. We summarily affirm the decision of the Court of Appeals insofar as it holds that an executed term of 20 years' imprisonment is appropriate. App. R. 58(A)(2).

## Conclusion

We vacate Dye's habitual-offender enhancement. We also summarily affirm the decision of the Court of Appeals that an executed term of 20 years' imprisonment is not inappropriate. We remand to the trial court with instructions to enter an order sentencing Dye to an executed term of 20 years.

Rucker and David, JJ., concur.

Dickson, C.J., concurs, noting that, notwithstanding Justice Massa's informative and persuasive dissent, I prefer to adhere to our existing controlling precedent of Mills v. State, 868 N.E.2d 446 (Ind. 2007), to which the Legislature has not responded with any contrary explicit legislative direction.

Massa, J., dissents with separate opinion.

7

**Massa, J., dissenting.**

As I read it, the serious violent felon statute is not a progressive penalty statute and therefore is not subject to the general prohibition against double enhancement. Even assuming it was, though, I believe Indiana's General Assembly has provided sufficient guidance that a habitual offender sentencing enhancement is permissible.

These reasons are explained in greater detail below, and lead me to respectfully dissent.

## I. The Serious Violent Felon Statute Is Not a Progressive Penalty Statute

First, I disagree with this Court's prior determination that Indiana Code § 35-47-4-5 (the "SVF statute"), which makes it a B felony for a serious violent felon to knowingly or intentionally possess a firearm, is a progressive penalty statute. Mills v. State, 858 N.E.2d 446, 449–50 (Ind. 2007). Progressive penalty statutes are those where "the seriousness of a particular charge (with a correspondingly more severe sentence) can be elevated if the person charged has previously been convicted of a particular offense." State v. Downey, 770 N.E.2d 794, 796 (Ind. 2002). In my view, the SVF statute does no such thing.

It is true that there is a different statute, Indiana Code § 35-47-2-23 (the "handgun statute"), which *is* a progressive penalty statute. That provision establishes criminal penalties for persons who violate the laws regulating the carrying of handguns and elevates those penalties from misdemeanor to felony status under certain conditions, including when the offender has a prior conviction under those handgun regulations or has been convicted of any felony within the preceding fifteen years. Ind. Code § 35-47-2-23(c)(2), (d). A conviction that is enhanced through the operation of the handgun statute, this Court has said, may not be the basis for additional enhancement under the general habitual offender statute. See Ross v. State, 729 N.E.2d 113, 116 (Ind. 2000).

In contrast, the SVF statute says "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class

B felony." Ind. Code § 35-47-4-5(c). It therefore has only two elements: that the offender was a serious violent felon, and that the offender knowingly or intentionally possessed a firearm. Most significantly, it contains only one penalty range: a B felony. There is no entry-level misdemeanor charge that is elevated to a felony by the prior status. Thus, the Ross rationale, that the "more detailed and specific" nature of the handgun provision trumps the general nature of the habitual offender statute, Ross, 729 N.E.2d at 116–17, is no more applicable to the SVF statute than it is to the statutes governing crimes like murder, robbery, or rape—all of which are routinely used as predicate offenses supporting a habitual offender sentence.

Notwithstanding this clear distinction, in Conrad v. State, 747 N.E.2d 575 (Ind. Ct. App. 2001), trans. denied, the Court of Appeals was asked to extend the rationale of Ross to the SVF statute. The court compared the handgun statute to the SVF statute, noted the differences between the two, but nevertheless decided it would violate the Rule of Lenity to forbid habitual offender enhancement under the first statute but not the second. Id. at 594–95. Even though there was no "enhancing" aspect to the SVF statute, the Conrad panel said, "the defendant's serious violent status does realistically serve as an 'enhancement' in that it increases the potential punishment for 'possession of a firearm' from nothing at all to six to twenty years imprisonment and a fine of up to $10,000, the sentencing range for a class B felony." Id. at 594. In essence, Conrad found an enhancement in that the SVF statute "enhances" from non-crime to crime—in my opinion, a feature that is common to all criminal statutes.[1]

With no further analysis, this Court agreed with Conrad. Mills, 868 N.E.2d at 449.

I would point, though, to a different opinion of the Court of Appeals. In Lewis v. State, 769 N.E.2d 243 (Ind. Ct. App. 2002), reh'g granted, 774 N.E.2d 941 (Ind. Ct. App. 2002), trans.

---

[1] Nor is it unique to enhance from crime to non-crime based solely on the "status" of the offender. For example, Indiana's age of consent is sixteen. However, if a person is classified under a number of particular statuses, such as "child care worker," Indiana Code § 35-42-4-7 makes it a class D felony to have any sexual relationship with a sixteen- or seventeen-year-old who might, say, attend that child care worker's school. To paraphrase Conrad, it increases the potential punishment for 'legal consensual sex' from nothing at all to six months to three years imprisonment and a fine of up to $10,000. And yet I doubt this Court would label the child seduction statute a "progressive penalty statute."

denied, addressing a similar appeal, the court compared the handgun statute to the SVF statute and said this:

> We acknowledge the practical effect of the handgun statutes, all of which have at their core the possession of a handgun as the criminal act. Possession of a handgun may be no crime at all if the defendant can prove that he has a license to carry it. In the absence of a license, possessing a handgun can be a Class A misdemeanor. If the defendant has a previous conviction for a handgun offense, a previous felony conviction, or carried the handgun under certain circumstances, the crime is elevated to a Class C felony. And if the previous felony has been designated a "serious violent felony," the crime is a Class B felony. Thus, in practical application, the handgun statutes do collectively impose increasingly severe punishments.
>
> The organization of the statutes, however, leads us to believe that the two handgun statutes are separate and distinct schemes. The general handgun statute could have been amended to include the unlawful possession by a SVF provisions as a further step in its already progressive punishment scheme, but instead, the unlawful possession by a SVF statute stands alone. The general handgun statute prohibits only the possession of handguns, which, as we have noted, is a subset of the more general class of "firearms" to which the unlawful possession by a SVF statute applies. And the general handgun statute imposes a fifteen-year time limitation on the use of a previous felony conviction (other than for a handgun offense), whereas there is no time limitation on use of a previous felony to classify a defendant as a serious violent felon for purposes of the unlawful possession by a SVF statute. A prior felony conviction more than fifteen years old could not support a felony charge for carrying a handgun but could nonetheless classify the defendant as a serious violent felon.

Id. at 248–49 (internal citations omitted); accord Hatchett v. State, 740 N.E.2d 920, 923 n.3 (Ind. Ct. App. 2001) ("Indiana Code Section 35-47-2-1 prohibits citizens at large from carrying handguns in public without a license, whereas the SVF statute prohibits serious violent felons from possessing firearms of any kind at any time. . . . Thus, we conclude that the SVF statute defines a crime separate and distinct from carrying a handgun without a license and cannot be considered an enhancement thereof."), trans. denied; see also Dye v. State, 956 N.E.2d 1165,

1175 (Ind. Ct. App. 2011) (May, J., dissenting) ("While Dye's SVF count was not based on a 'progressive penalty statute' . . . .").

I could not agree more. The statutes draw temporal distinctions (a non-handgun related serious violent felony more than fifteen years old would have no impact under the handgun statute, whereas it would still qualify under the SVF statute); geographic distinctions (the handgun statute expressly elevates the charge when the offense occurs near schools, whereas the SVF statute does no such thing); and distinctions between predicate felonies (the handgun statute applies to *any* felonies, whereas the SVF statute applies only to those felonies specifically enumerated). Also, as the Lewis court noted, the SVF statute is drafted to apply to the entire realm of firearms, whereas the handgun statute is specifically aimed only at a subset of that class.[2]

Furthermore, I also point to the habitual offender statute. Subsection (b) of that statute prohibits habitual offender sentencing for felonies where "the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person has a prior unrelated conviction." Ind. Code § 35-50-2-8(b)(1). We have said that this is a codification of our general rule prohibiting double enhancement of progressive penalty statutes. Mills, 868 N.E.2d at 451; see also Townsend v. State, 793 N.E.2d 1092, 1096 (Ind. Ct. App. 2003).

Plainly, the SVF statute does not fit our legislature's definition of a progressive penalty statute. The SVF statute is not a misdemeanor enhanced to a felony in the same proceeding solely because the person has a prior unrelated conviction. It is a felony from start to finish.

---

[2] Why this particular distinction? This Court has said that "[t]he Legislature has the power, in the interest of public safety and welfare, to provide reasonable regulations for the use of firearms which may be readily concealed, such as pistols." Matthews v. State, 237 Ind. 677, 686, 148 N.E.2d 334, 338 (1958) (analyzing the Firearms Act and its purpose "to achieve a maximum degree of control over criminal and careless uses of *certain types of firearms*" (emphasis added)). Whether this is correct—that handguns are a particular danger because of the ease of concealment—or because other types of firearms like shotguns and rifles may be more a part of common Hoosier heritage and thus less regulated is probably a topic for intense debate. What *is* clear, however, is that the General Assembly expressly prohibited *any* serious violent felon from knowingly or intentionally possessing *any* firearm.

4

Yet the <u>Mills</u> adoption of the <u>Conrad</u> analysis sweeps away all these clear legislative lines in favor of a simplified view of how the statutes operate; a view that may sometimes be accidentally correct in application, but will other times lead to absurd results that are clearly antithetical to the General Assembly's intent in crafting these separate provisions.

For example, imagine if Dye went to Coleman's studio armed not with a handgun, but with a shotgun or rifle. Dye could have literally dozens of prior felony convictions, but the prosecutor would be unable to charge him under the SVF statute and seek a habitual offender enhancement because of this Court's blanket analogy of the stand-alone SVF statute to the operation of the handgun statute. And this would be the case *even though Dye was guilty of absolutely no crime under the handgun statute*.

As another example, imagine if Dye went to Coleman's studio still armed with his handgun and with the same three prior felony convictions. But in this instance, imagine if all three prior felonies occurred in 1990 rather than in 1993 and 1998. Again, no prosecutor in this state would be able to charge Dye under the SVF statute and seek a habitual offender enhancement—*even though none of those prior felonies could enhance his sentence under the handgun statute*.

Finally, imagine that instead of Dye going to Coleman's studio, Coleman went to Dye's home. Dye has his handgun and his record reflects the 1993 and 1998 prior felonies. Once again, he would be free and clear of habitual offender enhancement to his SVF charge because, even though his felonies could theoretically enhance a charge under the handgun statute, *he is under no obligation to have a handgun license when carrying on his own property and therefore committed no crime under the handgun statute*.

These situations cannot be what our General Assembly envisioned when it drafted these statutes, but they are very real possibilities because this Court has mistakenly labeled the SVF statute as a "progressive penalty statute."

## II. Explicit Legislative Direction Exists

Under our rule, "*absent explicit legislative direction*, a sentence imposed following conviction under a progressive penalty statute may not be increased further under either the general habitual offender statute or a specialized habitual offender statute." Slip op. at 5 (quoting Downey, 770 N.E.2d at 796). The majority points to Mills as holding that such legislative direction is absent in cases involving convictions under the SVF statute.

But even if we accept that there remains a class of statutes—at this point containing only the SVF statute—that are "judicially defined progressive penalty statutes," and that fall under the general rule prohibiting double enhancement even though they are not misdemeanors elevated to felonies, I struggle with the Mills determination that the habitual offender statute does not provide sufficiently explicit legislative direction to permit enhancement of those statutes under its provisions. Because of this, I dissent.

Cases analyzing the interplay between progressive penalty statutes and the general and specialized habitual offender statutes mention a "dialogue" between the courts and the General Assembly. See Mills, 868 N.E.2d at 448; Downey, 770 N.E.2d at 795. I think this is probably a correct way of expressing how courts and legislatures interact, but at this point in the dialogue the General Assembly might fairly ask if we're listening.

In Mills, this Court noted that the general habitual offender statute was amended in 2001 as part of this ongoing back-and-forth, and highlighted two significant changes. Mills, 868 N.E.2d at 450–52. First, subsection (a) now began "*Except as otherwise provided in this section*, the state may seek to have a person sentenced as a habitual offender for any felony by alleging . . . that the person has accumulated two (2) prior unrelated felony convictions." Id. at 450 (emphasis added). Second, subsection (b) was added to the statute to enumerate the instances in which a habitual offender enhancement was *not* permissible. Id. at 450–51. Within subsection (b), the legislature exempted offenses that fall under our rule against double enhancement, Ind. Code § 35-50-2-8(b)(1), offenses which would otherwise be treated under the habitual traffic

6

violator statute, Ind. Code § 35-50-2-8(b)(2), and offenses that would be treated under the habitual substance offender statute. Ind. Code § 35-50-2-8(b)(3).

But <u>Mills</u> said this was not sufficient. It acknowledged that the 2001 amendment was a legislative response to this Court's jurisprudence regarding double enhancement. <u>Mills</u>, 868 N.E.2d at 451–52. And it acknowledged that the legislature could have codified the general rule without adding the "except as otherwise provided" language of subsection (a). <u>Id.</u> at 452. But it then went on to effectively read that clause out of the statute by saying "the 'except as otherwise provided' language signals the Legislature's intent to create exceptions to the statutory rule of subsection (a) but does not preclude continued judicial application of the general rule against double enhancements absent explicit legislative direction." <u>Id.</u>

In contrast, an example of sufficient legislative direction is found in <u>Downey</u>, where this Court was faced with a defendant whose misdemeanor marijuana possession charge was increased to a D felony as a result of a prior marijuana conviction. <u>Downey</u>, 770 N.E.2d at 794–95. The prosecutor also charged him with being a habitual substance offender under Indiana Code § 35-50-2-10. <u>Id.</u> Absent explicit legislative direction, this would be impermissible under our general rule. <u>Id.</u> at 798.

However, this Court found such explicit legislative direction because the habitual substance offender statute allowed "a habitual substance offender enhancement to be imposed on a person convicted of three unrelated 'substance offense[s],'" <u>id.</u> (quoting Ind. Code § 35-50-2-10), and defined "substance offense" as including "a Class A misdemeanor or a felony in which the possession . . . of . . . drugs is a material element of the crime." <u>Id.</u> (quoting Ind. Code § 35-50-2-10(a)(2)).[3] Therefore, "[b]y its specific inclusion of drug possession misdemeanors and felonies in the category of offenses that are subject to habitual substance offender enhancement,"

---

[3] In full, "substance offense" is defined as "a Class A misdemeanor or a felony in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime. The term includes an offense under IC 9-30-5 and an offense under IC 9-11-2 (before its repeal)." Ind. Code § 35-50-2-10(a)(2).

the Court found "the Legislature intended to authorize such an enhancement notwithstanding the existence of the drug possession progressive penalty statute." Id.[4]

So what should we require as sufficient legislative direction for the *general* habitual offender statute? As Downey explained, in the habitual substance offender statute the General Assembly specifically listed the offenses which would serve as predicate crimes. The legislature also did this with the habitual traffic violator statute and the repeat sexual offender statute. See Ind. Code §§ 9-30-10-4(a)–(c), 35-50-2-14(a). But those are "specialized habitual offender statutes," that apply to "certain closely related offenses." Downey, 770 N.E.2d at 795–96. We deal here with the broader and more general habitual offender statute.

As I read it, subsection (a) of the habitual offender statute says, in effect, that a habitual offender enhancement to a felony charge may be sought anytime the defendant has two prior unrelated felony convictions—unless a separate subsection of the statute prohibits it. Subsection (b) then articulates the three instances in which the habitual offender enhancement is prohibited. In essence, it tells prosecutors and courts: "You may do this, except where we say you cannot. And here are the times we say you cannot."

I think this was the most reasonable approach for the General Assembly to take while still responding to Ross's articulation of our general rule, and I am not sure what else it could have done. Given the broad and general scope of the habitual offender statute, the starting presumption would be that it applies to *all* felonies; it was far easier to list those felonies to which it does *not* apply than to attempt to draft a list enumerating all of the ones to which it *does* apply (particularly if this Court continues to expand its class of judicially created progressive penalty statutes). The statute already prohibits habitual offender enhancement of misdemeanors that are elevated to felonies because of prior felony convictions in accordance with our jurisprudence—is the Court also requiring the General Assembly to comb the criminal code for

---

[4] The Court also noted that the habitual substance offender statute had been amended in 1996 in response to decisions in Freeman v. State, 658 N.E.2d 68 (Ind. 1995) and Devore v. State, 657 N.E.2d 740 (Ind. 1995). See Beldon v. State, 926 N.E.2d 480, 484; Downey, 770 N.E.2d at 797. The 1996 amendment expressly permitted enhancement under the habitual substance offender statute where the predicate offense was an OWI conviction made under a progressive penalty statute. Id.; see also Haymaker v. State, 667 N.E.2d 1113, 1115 (Ind. 1996).

8

stand-alone felonies that we might later judicially define as de facto progressive penalty statutes? This seems needlessly demanding.

The courts of this state communicated to the General Assembly what was, and was not, permissible with respect to double enhancements. Several times, the General Assembly has responded. I believe their 2001 response amending the habitual offender statute shows first that the SVF statute is not a progressive penalty statute, and second that, even if the SVF statute were still subject to the general rule against double enhancement, there is explicit legislative direction permitting an adjudicated serious violent felon to be subject to additional enhancement under the general habitual offender statute.

Accordingly, I dissent.