**Ronald E. DUMAS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 45S00–0203–CR–187.

Supreme Court of Indiana.

Feb. 26, 2004.

Mark A. Bates, Appellate Public Defender, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

### Case Summary

After a trial by jury Ronald E. Dumas was found guilty of murder, felony mur-

der, and robbery as a Class A felony. He was also adjudged a habitual offender. The trial court sentenced Dumas to life without parole for the murder conviction and to a term of years for the robbery conviction. The trial court imposed a thirty-year sentence for the habitual offender adjudication. In this direct appeal Dumas raises the following rephrased issues: (1) Did the State's closing argument during the guilt phase of trial shift the burden of proof to Dumas thus resulting in prosecutorial misconduct; (2) Did the trial court allow improperly certified documents to be introduced into evidence at the habitual offender phase of trial; (3) Did the trial court err by allowing the introduction of hearsay evidence during the penalty phase of trial; and (4) Was the trial court's sentencing order imposing life imprisonment without parole inadequate as a matter of law? To each issue we answer no and therefore affirm the judgment of the trial court.

### Facts and Procedural History

On July 7, 1998 Sandra Irving, Edrick Wheeler, and Ronald E. Dumas were present at Irving's home where Irving consumed a quantity of heroin. At some point the trio decided to proceed to a car lot. Wheeler drove and en route Dumas commented that this would be a good "hit," referring either to drugs or money. R. at 263–64. Dumas and Irving exited the car approximately a block away from B & R Motors and walked to that location.

Brian McCarty owns B & R Motors, a used car lot located in Lake Station. John Fiss worked for McCarty as a salesman and was known for wearing flashy jewelry, including necklaces and gold and diamond rings. At approximately one or two o'clock in the afternoon of July 7, both McCarty and Fiss were present at the car lot. As McCarty was preparing a bank deposit, which consisted of about $750.00 placed in a small zipper bank bag, Dumas and Irving walked into the small office located on the lot. Irving inquired about a car, and when McCarty accompanied her to the lot Irving produced a handgun and pointed it at McCarty's head. Realizing "something was coming down" McCarty ran toward the office to warn Fiss. *Id.* at 79. As McCarty did so he heard gunfire. Abandoning the idea of going inside the office, McCarty then ran toward his truck. Looking over his shoulder McCarty saw Dumas pointing a handgun in his direction and saw a flash from the gun. A bullet struck McCarty, and he stumbled to the ground.

Immediately before shooting McCarty, Dumas was in the office where two customers had arrived on the scene. Displaying a handgun, Dumas demanded money from Fiss. The record is unclear whether Fiss responded, but in any event Dumas fired several shots striking Fiss in the face. Shortly thereafter Irving entered the office and began rummaging through desk drawers eventually declaring "I found it. I got the bag." *Id.* at 122. Dumas then said, "[G]et those damn rings because they're worth a lot of money." *Id.* The pair then fled the scene. The record shows McCarty suffered severe internal injuries from the shooting, was in a coma for twenty-seven days, and is paralyzed from the waist down. Fiss died as a result of gunshot wounds to the head and neck.

Dumas was charged with murder, felony murder, and robbery as a Class A felony. He was also alleged to be a habitual offender. In addition the State sought life imprisonment without parole alleging that Dumas intentionally killed Fiss while committing a robbery. Irving was charged with felony murder and robbery as a Class A felony. Under the terms of a plea agreement Irving pleaded guilty to felony murder and was sentenced to fifty years

imprisonment. She testified against Dumas at trial. The jury found Dumas guilty as charged and also adjudged him a habitual offender. In addition the jury recommended life imprisonment for the murder conviction. Following a sentencing hearing, in an order dated November 1, 2001, the trial court followed the jury's recommendation. Also, the trial court sentenced Dumas to thirty years imprisonment for the robbery conviction enhanced by an additional thirty years for the habitual offender adjudication. The sentences were ordered to be served consecutively. Because of double jeopardy concerns, the trial court vacated the conviction for felony murder and entered no sentence thereon. Dumas appealed to this Court raising four issues for review, one of which was that the sentencing order was deficient. The State conceded the point, and we remanded this cause to the trial court for a new sentencing order. On October 22, 2002, the trial court issued a new sentencing order once again imposing life imprisonment. This direct appeal ensued in due course.

## Discussion

### I.

#### *Prosecutorial Misconduct*

Dumas complains the State engaged in prosecutorial misconduct. His complaint is based on the following facts. During final argument at the guilt phase of trial, counsel for Dumas assailed the credibility of Dumas' accomplice, turned State's witness, Sandra Irving. He referred to her as a liar; contended that she and her boyfriend were the actual perpetrators of these crimes; and argued that she was protecting her boyfriend and falsely laying the blame on Dumas. In rebuttal the deputy prosecutor commented:

> [T]here is no evidence whatsoever that [Irving's boyfriend] was involved in this. But put that aside. How and why would she name [Dumas] if he wasn't involved? What motive does she have to lie? Was any motive that she had against Mr. Dumas presented in this court?

*Id.* at 557. At that point Dumas objected on grounds that it "suggests I have a burden of proof. I do not." *Id.* The trial court responded, "[t]o that extent, if that's how the jury took it, the defense does not have a burden of proof." *Id.* After agreeing that Dumas had no burden of proof the deputy prosecutor continued her rebuttal: "There must be a reason for a lie. There must be a reason that she implicated this man. And there is no reason presented before you." *Id.* at 558. Again Dumas objected, to which the trial court responded "noted." *Id.* Dumas contends the State's comments shifted the burden of proof to him and thus the State engaged in prosecutorial misconduct.

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Brewer v. State*, 605 N.E.2d 181, 182 (Ind.1993). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Here, although Dumas objected to the State's comments, he did not request an admonishment[1] nor did he move for mistrial. This issue is thus waived for review.

---

1. Both Dumas and the State refer to the trial court's remark, "[t]o that extent, if that's how the jury took it, the defense does not have a burden of proof," as an admonishment to the jury. However, the record is not at all clear whether the trial court was actually addressing the jury or simply responding with commentary to Dumas' objection. In any event Dumas does not contend that he was dissatisfied with this supposed admonishment. And the record is also clear that Dumas never requested a mistrial.

Waiver notwithstanding we address the merits of Dumas' claim. Dumas did not take the stand in his own defense. The Fifth Amendment privilege against self-incrimination is violated "when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State*, 669 N.E.2d 733, 739 (Ind.1996). However, statements by the prosecutor concerning the uncontradicted nature of the State's evidence do not violate the defendant's Fifth Amendment rights. *Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind.1990). Rather, comment on the lack of defense evidence is proper so long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify. *Id.; see also Timberlake v. State*, 690 N.E.2d 243, 254 (Ind.1997) (observing "[d]uring argument, the prosecutor may argue and comment upon the evidence presented at trial. . . . A comment based upon uncontradicted evidence is not equivalent to an impermissible comment upon a defendant's decision not to testify"). We conclude the deputy prosecutor's statements were well within the permissible range of fair commentary on the evidence or lack thereof and were not a comment on Dumas' right not to testify. For this reason alone Dumas' argument fails.

His argument fails for another reason as well. Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Brown v. State*, 746 N.E.2d 63, 68 (Ind.2001). Here, counsel for Dumas argued vehemently that a key State's witness was fabricating her testimony and covering for her boyfriend. The prosecutor was entitled to counter with argument that the witness was not lying and had no reason to do so.

## II.

### *Habitual Offender Finding*

Dumas contends that the habitual offender finding should be reversed because of error in the admission of certain exhibits. The record shows that over Dumas' objection the trial court admitted into evidence State's exhibit 54 which is identified as consisting of "name card, repeater cards, information/identification sheet, finger prints and FBI sheets for Ronald Dumas, M/B, DOB 11/12/1959, SS# 303–68–5066, B of I# 44470, FBI # 13256T9." R. at 812. Dumas also objected to State's exhibit 58 which is identified as consisting of "repeater sheet for Ronald Dumas, 9–22–87, SS# 303–68–5066, DOB 8–31–58, BOFI # 44470." *Id.* at 816.[2] Both documents originated from the offices of the Lake County Sheriff and purport to be certified pursuant to Indiana Trial Rule 44(A)(1).

Dumas contends "the documents were certified at the beginning and stated that the foregoing were true, full and accurate." Br. of Appellant at 9. However, as Dumas correctly points out "[t]here were no foregoing documents attached to the certification." *Id.* Thus, according to Dumas, the documents were not properly certified. We have addressed this precise issue on more than one occasion. The law is now settled that the admission of documents is not error where the certification is placed on top of the papers of an exhibit rather than on the back. *See Miller v. State*, 563 N.E.2d 578, 584 (Ind.1990) ("[T]he place-

2. In a footnote Dumas points to a discrepancy between the dates of birth on the two exhibits. Br. of Appellant at 9 n.3. However he advances no argument in this regard. Any claimed error is waived.

ment of the certificate on top of the papers rather than on the back in no way causes any confusion as to the authenticity of the papers."); *Cavendish v. State*, 496 N.E.2d 46, 48 (Ind.1986) ("[T]he authenticity of the documents was not placed into question by virtue of the fact that the certification was stapled atop the certified documents."). The trial court properly admitted State's exhibits 54 and 58. Accordingly there was no error.

## III.

### *Hearsay During the Penalty Phase*

Dumas complains the trial court erred by allowing into evidence at the penalty phase of trial hearsay evidence offered by the State. The facts are these. After the jury returned a verdict of guilty on all counts and after it adjudged Dumas a habitual offender, the case proceeded to the penalty phase of trial. The State alleged that Dumas was eligible for life imprisonment based on the statutory aggravator of intentional killing while committing or attempting to commit robbery. Outside the presence of the jury, counsel for Dumas addressed the trial court as follows:

> I'm actually going to ask the court to let me read in parts of some of the depositions.... Your [sic] know, from my point of view, this is essentially a sentencing.... And hearsay would be admissible at sentencing, it is typically in this state, as long as there is some indicia of reliability connected with it, and the court acts as a gatekeeper on that. I would assume these same depositions that have been published would have that indicia of reliability, as would depositions were [sic] taken but not published.

R. at 655–57. Over objection by the State and after extended arguments by both sides, the trial court agreed to allow defense counsel to read portions of depositions to the jury. The jury was then reconvened. The State called no witnesses. Rather, it moved to incorporate into the penalty phase of trial all of the evidence and testimony from the guilt phase as well as the habitual offender phase. The State then made opening remarks and passed the jury.

In its presentation, counsel for the defense also called no witnesses. Rather he proceeded with what the court characterized as a "sentencing argument" that included reading portions of depositions from several witnesses. *Id.* at 676. Through the use of depositions the defense attempted to advance the argument that because of inconsistencies in the testimony of various witnesses, the substantial involvement of Irving, and the State's lack of physical evidence connecting Dumas to the murder, there was "residual doubt"[3] that Dumas was the shooter and thus a life sentence was not appropriate.

Before the State proceeded with its rebuttal argument, and outside the hearing of the jury, the following exchange occurred:

> [Deputy Prosecutor]: I believe before we started [defense counsel] indicated this was a sentencing phase, therefore hearsay was admissible, reliable hearsay. Is that accurate?
>
> [Court]: Yes.
>
> [Deputy Prosecutor]: I have two pieces of hearsay I would like to elicit myself.

*Id.* at 695. One of the items of hearsay was a statement made by Dumas' cellmate to a third party. According to the third

---

**3.** *See Miller v. State*, 702 N.E.2d 1053, 1069 (Ind.1998) (describing residual doubt as "when a jury finds a defendant guilty beyond a reasonable doubt, there still may be a measure or residuum of doubt about the defendant's guilt").

party, the cellmate alleged Dumas confessed to the murder and robbery. The second was a written statement by Edrick Wheeler, the person who was alleged to have driven Dumas and Irving to the crime scene. Although listed as a witness in the State's discovery response, Wheeler could not be located before trial for questioning by the defense, nor did he testify at trial. However at some point Wheeler gave a sworn statement to an investigating officer. Defense counsel objected to both statements on the grounds of hearsay. The trial court sustained the objection with respect to the cellmate's statement but overruled the objection concerning Wheeler's statement. The State proceeded with its rebuttal that included reading portions of the Wheeler statement. In essence his statement corroborated Irving's guilt phase testimony that Wheeler drove Dumas and Irving to a location near the car lot.

Hearsay is a statement made out-of-court that is offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c); *Kubsch v. State*, 784 N.E.2d 905, 919 (Ind.2003). It is clear that Wheeler's statement was hearsay. As such it was not admissible at trial unless it fell within some exception to the hearsay rule. Although technically not an exception to the hearsay rule, Indiana Evidence Rule 101(c) provides in pertinent part:

> The rules [of evidence], other than those with respect to privileges, do not apply in the following situations ... [p]roceedings relating to extradition, *sentencing*, probation, or parole; issuance of criminal summonses, or of warrants for arrest or search, preliminary juvenile mat-

ters, direct contempt, bail hearings, small claims, and grand jury proceedings.

(emphasis added); *see also Letica v. State*, 569 N.E.2d 952, 957 (Ind.1991) (observing that "strict rules of evidence do not apply in sentencing hearings and that hearsay evidence ... is admissible"). In this case the trial court apparently accepted Dumas' argument that the penalty phase of a life without parole trial was in the nature of a sentencing proceeding and thus allowed Dumas to introduce hearsay testimony. Although the record is unclear, apparently the trial court allowed the State to introduce hearsay for the same reason.

■■■ A sentence of life without parole is subject to the same statutory standards and requirements as the death penalty. *Ajabu v. State*, 693 N.E.2d 921, 936 (Ind.1998). Under the death penalty statute, following the completion of the guilt-determination phase of the trial and the rendering of the jury's verdict, the trial court reconvenes the jury for the penalty phase. *Brown v. State*, 783 N.E.2d 1121, 1127 (Ind.2003). As with capital punishment, before life imprisonment can be imposed, the State must prove beyond a reasonable doubt at least one aggravating circumstance listed in subsections (b)(1) through (b)(16) of the statute. *See* I.C. § 35–50–2–9; *see also Bivins v. State*, 642 N.E.2d 928, 955–56 (Ind.1994). Once the jury deliberates and has made its recommendation, the jury is dismissed.

■■■ Indiana Evidence Rule 101(c) makes clear that with the exception of grand jury proceedings,[4] the proceedings in which the rules of evidence do not apply

---

4. A grand jury is an accusatory body whose "primary duty is to investigate the possibility of and make a determination as to whether or not probable cause exists to believe that one or more criminal offenses may have occurred." *Ajabu v. State*, 677 N.E.2d 1035,

1040 (Ind.Ct.App.1997), *trans. denied*. In that sense its function is similar to that of a judge in a proceeding relating to the "issuance of criminal ... warrants for arrest." Evid. R. 101(c).

involve those where evidence is presented to a trial judge alone without the intervention of a jury. *Id.* The rationale for exempting certain proceedings, including sentencing, from the rules of evidence is to provide the trial judge with the widest range of relevant information in reaching an informed decision. We presume the trial judge is aware of and knows the law, and considers only evidence properly before the judge in reaching a decision. *Emerson v. State,* 695 N.E.2d 912, 917 (Ind. 1998); *Birdsong v. State,* 685 N.E.2d 42, 47 (Ind.1997). By contrast, where the guilt-determination phase of a capital trial is presented to a jury, the penalty phase is also presented to a jury. Like the guilt-determination phase, the penalty phase of a capital trial requires the introduction of evidence with the burden on the State to prove its case beyond a reasonable doubt. Despite the statute's characterization of the penalty phase as a "sentencing hearing," *see* I.C. § 35–50–2–9(d), this phase is nonetheless in the nature of a trial to which the rules of evidence apply.

■■■ Of course our evidentiary rules are subject to limitations imposed by applicable provisions of the Indiana Constitution as well as the Federal Constitution. *See, e.g., Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (declaring that the State's hearsay rule to the contrary notwithstanding, the exclusion of certain hearsay testimony offered by the defendant in the penalty phase of a capital trial violated the Due Process Clause of the Fourteenth Amendment). However, that is not to say that the rules of evidence do not apply in the penalty phase of a capital trial. The facts supporting eligibility for the death penalty or life without parole must be found beyond a reasonable doubt. And in a jury trial, the jury must find these facts. *See Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In sum, we conclude that contrary to the trial court's determination, the rules of evidence are applicable in the penalty phase of a capital trial. Thus, by allowing the State to introduce hearsay testimony during this phase, the trial court erred.

■ However, the error was invited. The court apparently allowed the introduction of the out-of-court statement based on Dumas' contention that the penalty phase of trial was essentially a sentencing hearing in which hearsay is admissible. A party may not invite error and then later argue the error supports reversal. *Kingery v. State,* 659 N.E.2d 490, 494 (Ind. 1995). Error invited by the complaining party is not reversible error. *Id.* Accordingly Dumas is entitled to no relief on this issue.

## IV.

### *Life Imprisonment Without Parole*

For his last allegation Dumas challenges the trial court's sentencing order. As indicated in the Facts section of this opinion, while this case was pending before us we remanded this cause to the trial court for issuance of a new sentencing order. In his initial appeal, Dumas contended the sentencing order was deficient because the trial court "failed to allow for the disparity of sentences [imposed in Lake County] and did not properly engage in the weighing of mitigators and aggravators." Br. of Appellant at 9. The State challenged both contentions, but agreed the trial court's sentencing order was deficient for different reasons: (i) the statement included non-capital aggravators, *see Pope v. State,* 737 N.E.2d 374, 383 (Ind.2000) (noting that whether imposing a death penalty or a sentence for life without parole, trial courts must "limit the aggravating circum-

stances eligible for consideration to those specified in the death penalty statute, Indiana Code Section 35–50–2–9(b)") (quoting *Bivins*, 642 N.E.2d at 955), and (ii) the sentencing order failed to set forth the trial court's personal conclusion that life imprisonment was the appropriate punishment for the offender and the crime. *See Harrison v. State*, 644 N.E.2d 1243, 1262 (Ind.1995) (noting a capital sentencing statement must include, among other things, "the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime").

Upon remand the trial court entered a revised sentencing order that provides in pertinent part:

> The court finds that the aggravating circumstance alleged by the state, namely that the defendant did intentionally kill the victim in Count I while committing or attempting to commit robbery was proved beyond a reasonable doubt. The evidence at trial showed that the defendant and his accomplice entered the used car business of the victims in Counts I and III with the intent to commit a robbery. Each was armed with a handgun. The defendant demanded money from the victim in Count I, then shot him several times at close range. The defendant also shot the victim in Count III, who is now paralyzed. A charge of Attempted Murder was not filed as to that victim, but could have been sustained by the evidence. The defendant fired his weapon at another man who was present, but who escaped. The evidence proved beyond a reasonable doubt that the defendant was willing to kill anyone present to facilitate the robbery. The jury, after being instructed that the state must prove the aggravating circumstance beyond a reasonable doubt and that any mitigating circumstances are outweighed by aggravating circumstance, returned a Verdict that recommends Life Imprisonment Without Parole be imposed upon the defendant. The court has examined each of the mitigating circumstances that may be considered, pursuant to I.C. 35–50–2–9(c) and finds the [sic] those referred to in (C)(1) throrough [sic] (7) do not exist and that any mitigation shown in (C)(8) is outweighed by the aggravating circumstance.

> In summary, the court in full consideration of the evidence and the verdict of the jury does now conclude that Life Imprisonment Without Parole is the appropriate punishment.

Appellant's Supplemental App. at 4–5. Dumas contends that even as revised, the sentencing order is nonetheless deficient because the trial court still "failed to identify with specificity what mitigating factors were present and what weight it assigned to those factors." Supplemental Br. of Appellant at 3.

A sentence of life without parole is imposed under the same standards and is subject to the same requirements as a death sentence. *Holsinger v. State*, 750 N.E.2d 354, 361 (Ind.2001); *Pope*, 737 N.E.2d at 382; *Nicholson v. State*, 734 N.E.2d 1047, 1048 (Ind.2000); *Rawley v. State*, 724 N.E.2d 1087, 1091 (Ind.2000); *Ajabu*, 693 N.E.2d at 936. We have previously set forth those requirements as follows:

> The trial court's statement of reasons (i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence, and (iv) must set forth the trial court's personal conclusion that

the sentence is appropriate punishment for this offender and this crime.

*Harrison,* 644 N.E.2d at 1262 (citations omitted). In *Holsinger,* we vacated the defendant's life sentence in part because the trial court's sentencing order did not meet the requirements of *Harrison. Holsinger,* 750 N.E.2d at 363. Dumas argues the sentencing order in this case suffers the same infirmity.

The trial court in this case specifically found the existence of the statutory aggravator: intentional killing while committing or attempting to commit robbery. *See* I.C. § 35–50–2–9(b)(1)(G) (West 1998). And the trial court recounted relevant portions of the evidence to support its finding. The trial court also determined that the statutory mitigating factors set forth in Indiana Code section 35–50–2–9(c)(1) through (c)(7) did not exist.[5] Dumas makes no claim that the trial court erred in finding the existence of the aggravating factor; nor does he challenge the trial court's finding that the mitigating factors in (c)(1) through (c)(7) did not exist. Rather, his complaint concerns the statutory mitigator set forth in (c)(8), "other circumstances appropriate for consideration." According to Dumas, he raised residual doubt as a mitigating factor. Dumas then argues that by indicating, "any mitigation shown in (c)(8) is outweighed by the aggravating circumstance,"

the trial court identified residual doubt as mitigating evidence and thus "was duly bound to state how it arrived at its existence and how it weighed that evidence against the aggravator." Supplemental Br. of Appellant at 8. We disagree with this assessment.

The record shows that at the sentencing hearing Dumas introduced *no* evidence of mitigation whatsoever. Instead he argued that the imposition of a life sentence would be disproportionate to sentences imposed on similarly situated defendants. More specifically Dumas contended that there had been instances in Lake County where defendants had committed· offenses more heinous than those in this case, including the commission of multiple homicides, and the prosecutor sought neither the death penalty nor life without parole. R. at 729–37. Dumas argued that on this ground the trial court should impose a term of years. *Id.* Dumas made no reference to residual doubt, an argument made to and rejected by the jury nearly two months earlier at the penalty phase of trial.

We acknowledge the trial court's sentencing order is not a model of clarity and explicitness. However, the record makes clear that the trial court's reference to "any mitigation shown in (c)(8)" was in direct response to the claim Dumas presented at sentencing. *Cf. Holsinger,* 750

---

**5.** Indiana Code section 35–50–2–9(c) (West 1998) provides:

The mitigating circumstances that may be considered under this section are as follows:
 (1) The defendant has no significant history of prior criminal conduct.
 (2) The defendant was under the influence of extreme mental or emotional disturbance when the murder was committed.
 (3) The victim was a participant in or consented to the defendant's conduct.
 (4) The defendant was an accomplice in a murder committed by another person, and the defendant's participation was relatively minor.

 (5) The defendant acted under the substantial domination of another person.
 (6) The defendant's capacity to appreciate the criminality of the defendant's conduct or to conform that conduct to the requirements of law was substantially impaired as a result of mental disease or defect or of intoxication.
 (7) The defendant was less than eighteen (18) years of age at the time the murder was committed.
 (8) Any other circumstances appropriate for consideration.

N.E.2d at 363 (recounting the mitigating circumstances the defendant introduced, which included evidence of his youthful age, domination by another, his troubled childhood, lack of criminal history, intoxication, his surrender to and cooperation with authorities, and his remorse). It is apparent the trial court in this case determined that the sole factor Dumas presented as "mitigating," namely, the imposition of a life sentence would be disproportionate to sentences imposed on similarly situated defendants, was outweighed by the aggravating factor. The finding of mitigating circumstances is within the discretion of the trial court. *Powell v. State*, 769 N.E.2d 1128, 1134 (Ind.2002); *Shields v. State*, 699 N.E.2d 636, 639 (Ind.1998). However, the trial court does not abuse its discretion in failing to consider a factor that was never raised at sentencing. *Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind.2000). We find no abuse. The trial court's sentencing order was sufficient.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs except as to sentence. Finding the sentencing order inadequate, he would impose a term of 95 years. *See Brown v. State*, 783 N.E.2d 1121 (Ind.2003).