**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY EVANS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1203-CR-115 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Anne Flannery, Commissioner
Cause No. 49G22-1102-FC-9569

**November 15, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Jeffery Evans was charged with four counts of Child Molesting,[1] a class C felony. Following a jury trial, Evans was found guilty on all counts. Evans's counsel objected to several comments that the deputy prosecutor made during closing argument on rebuttal. Some of those objections were sustained, but Evans did not request that the trial court admonish the jury. Rather, Evans moved for a mistrial, which the trial court denied, and Evans was convicted on all counts.

Evans appeals his convictions, claiming that the trial court should have granted his motion for a mistrial because the deputy prosecutor's comments placed him in a position of grave peril as a result of "personal opinion, disparagement, appeal to emotion, and burden shifting." Appellant's Br. p. 5. Because Evans did not request the trial court to admonish the jury, he has waived the issue. We also conclude that the deputy prosecutor's comments did not amount to misconduct. As a result, Evans has failed to show that he was placed in grave peril or that fundamental error occurred. Thus, the trial court's decision denying Evans's motion for a mistrial was not error, and we affirm the judgment of the trial court.

## FACTS

A.B. was born on November 6, 1998. Her mother is Melissa Dalton and her father is Chris Byers. Evans is Byers's stepfather. Byers and Dalton divorced sometime in 2006, and Dalton ultimately obtained custody of A.B. and two other daughters who

---

[1] Ind. Code § 35-42-4-3.

visited Byers on alternate weekends. Prior to that time, A.B. lived with Byers for a while.

At some point, A.B. and her sisters began visiting Evans and his wife on a regular basis. A.B. referred to them as Grandpa and Grandma. While visiting with the Evanses, A.B. typically watched television or played computer games.

On one occasion, when A.B. was ten or eleven years old and visiting Evans alone at his residence, Evans entered a bedroom where A.B. was resting and fondled A.B.'s neck, breasts, and legs. Evans also kissed A.B. on the lips. Immediately following the incident, Evans made A.B. promise not to tell anyone.

During another visit, A.B. and Evans were watching a movie together. At some point, A.B. fell asleep and remembered waking up on the floor and felt Evans kissing her neck. Evans also touched A.B.'s breasts and "private area." Tr. p. 68. Evans also fondled himself and again warned A.B. not to tell anyone about the incident.

A.B. eventually told a friend that Evans had been touching her in "wrong ways." Id. at 71. Sometime in December 2010, A.B. attended a "good touch/bad touch" presentation at her school. Id. at 82-85, 102. A counselor told A.B. and other students that they should always report any improper touching. Later that month, A.B. told Dalton about the incidents that had occurred with Evans.

Dalton contacted the Indianapolis Metropolitan Police Department (IMPD) and reported what A.B. had told her. A.B. then gave statements to police detectives, a forensic child interviewer, and a deputy prosecutor regarding the molestations.

3

Thereafter, on February 25, 2011, the State charged Evans with four counts of class C felony child molesting. The charging information alleged that Evans had fondled A.B., who was, at the time, aged ten or eleven, between November 6, 2008, and November 5, 2010.

Evans's jury trial commenced on February 9, 2012. During the deputy prosecutor's closing argument on rebuttal, Evans's counsel objected on several occasions. The trial court sustained three of the objections, and another resulted in an admonishment to the prosecutor. In particular, the following exchanges occurred:

> [Prosecutor]: How did it happen that he was wrongfully accused? It didn't because he's not. There is no evidence in this record that tells you that [A.B.]—
>
> [Defense Counsel]: Objection, improper burden shifting.
>
> The Court: Sustained, proceed.
>
> [Prosecutor]: Judge, I'm just merely—
>
> The Court: Overruled, proceed.
>
> [Defense Counsel]: The State is clearly attempting to shift the burden. We're just asking for a fair trial.
>
> The Court: I understand, sir. Proceed.
>                                        . . .
> [Prosecutor]: Now [defense counsel] says that maybe [A.B.] wanted attention from someone. Well, maybe his client picked that up. Maybe because she was the child that took this the hardest, he was showing her that extra attention. She was his favorite. They did things together. He built trust with her. Those are the children that get molested. Maybe he was showing her that attention. So he's going to show you how this happened and he's yet to do that. How does this happen—

4

[Defense Counsel]: Judge, I'm going to object. May we approach?

[Prosecutor]: Judge, I am merely restating what [defense counsel] said.

[Defense Counsel]: Judge, she's—it's burden shifting.

Side bar conference out of the hearing of the jury:

The Court: You can't argue about what he failed to do, to bring any evidence, but you can make your argument based on what he argues. Just avoid shifting the burden.

[Prosecutor]: Ok.

Side bar conference concluded.

[Prosecutor]: So how does it happen according to [defense counsel] and the defendant's bag of tricks? That's what you have to consider that it is. It's their bag of tricks. It's their smoke and mirrors—

[Defense Counsel]: Objection. . . .

[Prosecutor]: It's the defense's attempt—

[Defense Counsel]: That's improper argument.

The Court: Sustained. . . .

. . .

[Prosecutor]: [Defense Counsel] says there is too much at stake, and I agree, there is too much at stake. . . . And we go home and we tell our children, if something happens to you, then you should tell, and if what you've heard in this courtroom is not enough, then we should stop telling our child that—

[Defense Counsel]: Objection, improper argument.

The Court: Sustained.

5

Tr. p. 238-40, 243.  At the conclusion of the closing arguments, Evans moved for a mistrial, which the trial court denied.  Evans was found guilty on all counts and was subsequently sentenced to four years on each count with the sentences to run concurrently.  He now appeals.

DISCUSSION AND DECISION

In determining whether the trial court erred in denying Evans's motion for a mistrial, we initially observe that to properly preserve a claim of prosecutorial misconduct, a defendant must object and request that the trial court admonish the jury. Nunley v. State, 916 N.E.2d 712, 721 (Ind. Ct. App. 2009).  A prompt objection to alleged prosecutorial misconduct allows the trial court the opportunity to prevent or remedy any prejudice to a defendant without the waste of time and resources involved in the reversal of a conviction. Collins v. State, 966 N.E.2d 96, 106 (Ind. Ct. App. 2012).  If the defendant is not satisfied with the admonishment to the jury, the proper procedure is to move for a mistrial. Dumas v. State, 803 N.E.2d 1113, 1117 (Ind. 2004).   The failure to object and request an admonishment results in waiver of the issue. Id.

In instances where a claim of prosecutorial misconduct is properly preserved, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. Baer v. State, 866 N.E.2d 752, 756 (Ind. 2007).  The gravity of peril is measured by the probable persuasive effect of the

6

misconduct on the jury's decision rather than by the degree of impropriety of the conduct. Id.

In this case, Evans did not ask the trial court to admonish the jury when he objected to the deputy prosecutor's closing argument. Tr. p. 238-44. As a result, the issue is waived, and Evans must show fundamental error. Fundamental error "must constitute a blatant violation of basic principles, the harm or potential harm must be substantial, and the resulting error must deny the defendant fundamental due process." Wilson v. State, 514 N.E.2d 282, 284 (Ind. 1987). Fundamental error is an error so prejudicial to the rights of the defendant as to make a fair trial impossible. Barany v. State, 658 N.E.2d 60, 64 (Ind. 1995).

In this case, the record establishes that the deputy prosecutor's arguments on rebuttal were intended to counter certain arguments that Evans made. For instance, Evans's counsel asserted during closing argument that A.B. falsely accused Evans of committing the molestations because of the impact that her parents' divorce had on her, and that A.B. was "acting out" because she was seeking attention. Tr. p. 232-33. Evans's counsel also maintained that Dalton claimed that she "did not know her own daughter." Id. at 233. However, that was not Dalton's testimony. In fact, Dalton was watching a television show about "getting to know your children" and stated that she did not know A.B. "as well as she thought she should or could." Id. at 96.

Also, according to Evans's counsel during closing argument, A.B. was purportedly "bounced around from household to household." Id. at 233. That was also a

7

mischaracterization of the evidence, in that it was established that A.B. was never merely shuffled from house to house. Rather, the evidence showed that A.B. lived with one parent, continuously, and then another, for up to a year at a time with each. Id. at 104-07.

We also note that Evans's counsel implied that A.B.'s version of the events substantially changed and were contradictory. However, in reality, A.B.'s story never changed. Rather, she was able to relate more details of the incidents to the Forensic Child Interviewer with each new visit. Id. at 232-37.

Rather than objecting to the purportedly inaccurate or inappropriate closing arguments that Evans made, the deputy prosecutor, in her rebuttal argument, maintained that the defense merely argued that it was going to tell the jury how an innocent man can be wrongfully accused of committing a crime. She also added that Evans made such assertions without any evidence supporting them. Tr. p. 238. The deputy prosecutor then pointed out that nothing in the record supported the conclusion that A.B.'s accusations were wrongfully made. Id. When Evans objected, the trial court sustained the objection. Id.

In our view, the deputy prosecutor's arguments were intended to rebut various mischaracterizations when Evans implied that there was evidence to show that the accusations were wrong. Indeed, although the evidence demonstrated that A.B. was going through a difficult time because of her parents' divorce, there was no testimony that she accused Evans of committing the offenses merely to seek attention. Additionally, as noted above, the record also did not support Evans's claim that A.B. was

"bounced around from house to house" in support of his theory that Evans had been falsely accused. Tr. p. 233. The deputy prosecutor further pointed out that Evans's claim that Dalton did not really know A.B. was not supported by the evidence. Additionally, it was asserted that Evans's theory was "full of holes." Id. at 241.

That said, for the deputy prosecutor to point out that defense counsel's closing argument was not supported by evidence in the record in no way constitutes shifting the burden of proof from the State to the defendant. In other words, there was no testimony or argument suggesting that Evans had to prove anything. Not one of the deputy prosecutor's arguments on rebuttal states that Evans bore the burden to prove his innocence, or was the result of personal opinion or appeal to emotion. Id. at 240-43.

In sum, when examining the comments that the deputy prosecutor made during her closing argument on rebuttal, we cannot say that she engaged in any misconduct. Rather, as discussed above, her comments were in response to the specific claims that Evans's counsel made during closing argument that were not supported by the evidence. As a result, Evans has failed to establish fundamental error, and we conclude that the trial court properly denied Evans's motion for a mistrial.

The judgment of the trial court is affirmed.

BRADFORD, J., concurs.

ROBB, C.J., concurs in result without opinion.

9