**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRENT WELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NATHAN WARREN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A05-1201-CR-31 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Chris D. Monroe, Judge
Cause No. 03D01-1008-FC-1033

**June 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Nathan Warren appeals his sentence for Class C felony stalking, Class D felony stalking, and Class D felony attempted inducement of obstruction of justice. We affirm and remand.

## Issues[1]

Warren raises numerous issues, which we consolidate and restate as:

  I.  whether the trial court properly considered a slideshow presentation by the State during sentencing;

  II.  whether the trial court erred by failing to consider certain proposed mitigators; and

  III.  whether Warren is entitled to credit time.

## Facts

Warren and Carrie McKee began a relationship in 1998, and they were married in 2004. Warren had a son from a prior marriage. During Warren's marriage with McKee, he was verbally and physically abusive to her. In October 2009, McKee learned that Warren was having an affair, and she left him for one month. In February 2010, McKee became pregnant, but in May 2010, she learned that Warren was still having an affair. McKee left Warren and moved in with her parents in Bartholomew County.

---

[1] Warren also argues that the trial court failed to enter a signed abstract of judgment into the record and that a reversal of his convictions is required as a result. As the State points out, Warren's appendix contains a copy of the signed abstract of judgment. See App. p. 157-58. Thus, we do not address this argument.

  Further, in a very brief argument, Warren seems to take issue with the trial court's consecutive sentencing, sentencing statement, and imposition of the maximum sentence. See Appellant's Br. pp. 9-10. However, Warren does not present a cogent argument, and he has waived the issue. See Ind. Appellate Rule 46(A)(8)(a).

In June 2010, McKee filed a motion for a protection order in Hendricks County against Warren because of repeated phone calls to her cell phone, her place of employment in Hendricks County, and her parents' home, threats to harm her and her unborn child, and hacking into her Facebook account, personal email account, and cell phone account. For example, between May 2010 and November 2010, Warren called McKee at her parents' residence 319 times. The trial court granted the protection order on June 23, 2010, and McKee also filed a petition for dissolution in June 2010 in Putnam County.

On June 15, 2010, McKee became Facebook friends with Ferryn Palmer, one of her friends from high school. Suddenly, Warren started repeatedly calling Palmer at work, despite being told that Palmer was out. Warren then started texting and calling Palmer, accusing him of having an affair with McKee. Warren repeatedly threatened to shoot Palmer, and he repeatedly drove slowly past Palmer's house. Palmer reported the harassment to the Columbus Police Department.

Despite the protection order, Warren called McKee at work on July 19, 2010. On July 22, 2010, Warren was charged with Class A misdemeanor invasion of privacy in Hendricks County. On July 31, 2010, Warren drove in a rented car to Palmer's neighborhood in Bartholomew County. Warren had his fifteen-year-old son in the car with him. Warren told officers that he wanted to see if McKee was at Palmer's residence. He was armed with a loaded handgun at the time. The officers arrested Warren for a violation of the Hendricks County protection order.

3

On August 16, 2010, the State charged Warren with Class C felony stalking for his actions against Palmer, Class D felony stalking for his actions against McKee, three counts of Class D felony intimidation for his threats to Palmer, six counts of Class B misdemeanor harassment for his calls to McKee and Palmer, and one count of Class A misdemeanor invasion of privacy. The trial court entered an order prohibiting Warren from having any contact with McKee or Palmer. Warren was released on bond on August 23, 2010.

On October 25, 2010, Warren called a car dealership and pretended to be a Columbus police officer. Warren was seeking information regarding Palmer's purchase of a new vehicle and whether McKee was with Palmer during the purchase. Even though Palmer had only driven the vehicle to his house and his work, Warren knew the temporary plate number.

McKee received several phone calls from Warren at work in October. Also, Warren went to the hospital where McKee was going to deliver the baby and requested a list of women scheduled to be induced. On November 14, 2010, Warren tried to get into the birthing center while McKee was having the baby. On November 16, 2010, the trial court revoked Warren's bond as a result of the continued stalking.

At a December 2010 hearing in the Putnam County dissolution action, Warren was ordered to disclose the location of certain missing marital property. McKee's attorney ultimately filed an affidavit of contempt. The dissolution court found Warren in contempt and, on May 11, 2011, the dissolution court ordered that he "remain incarcerated until he provides the location of [the missing items.] . . . Any sentence he

4

receives will be consecutive to any executed sentence he may receive as a result of any pending criminal charges." App. p. 198.

During recorded telephone calls between Warren and his family members while he was incarcerated, Warren tried to convince family members to contact McKee and her family. Warren repeatedly blamed his mother, his son, McKee, and Palmer for his incarceration.

In August 2011, the State amended the stalking and intimidation charges and added charges of two counts of Class B misdemeanor harassment, Class A misdemeanor invasion of privacy, three counts of Class A misdemeanor attempted invasion of privacy, and three counts of Class D felony attempted inducement of obstruction of justice. In November 2011, Warren pled guilty to Class C felony stalking, Class D felony stalking, and Class D felony attempted inducement of obstruction of justice. The State agreed to dismiss the remaining charges and agreed that, for the attempted inducement of obstruction of justice conviction, Warren would receive a three-year sentence suspended to community corrections to be served consecutive with the remaining sentences, which were left to the trial court's discretion. The trial court did not address credit time because it did not have information regarding the resolution of Warren's contempt finding in the dissolution proceeding. The trial court gave the State thirty days to submit evidence regarding the credit time. Warren now appeals.

## Analysis

Warren raises several sentencing issues. Sentencing decisions are within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007),

clarified on reh'g, 875 N.E.2d 218.  However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law.  Id. at 490-91.  The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion.  Id.  The weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review.  Id.

## I. *Admission of the Slideshow*

Warren first argues that the trial court abused its discretion by admitting a Power Point slideshow used by the State during its argument.  Warren argues that the slideshow was "unauthenticated evidence," that he was not able to cross-examine the evidence, that it allowed the deputy prosecutor to testify as an expert, and that it amounted to prosecutorial misconduct.

Indiana Evidence Rule 101(c) provides that the evidence "rules, other than those with respect to privileges, do not apply in . . . [p]roceedings relating to . . . sentencing . . . ."  "The rationale for exempting certain proceedings, including sentencing, from the rules of evidence is to provide the trial judge with the widest range of relevant information in reaching an informed decision."  Dumas v. State, 803 N.E.2d 1113, 1121 (Ind. 2004).

"We presume the trial judge is aware of and knows the law, and considers only evidence properly before the judge in reaching a decision." Id.

At the sentencing hearing, Warren objected that the slideshow was argument, not evidence, and the trial court overruled his objection. Warren also objected twice that the slideshow presented facts not in evidence, and the trial court sustained those objections. Warren also objected to another part of the slideshow, which included a recording of a telephone call because he could not cross-examine the persons involved in the call. The trial court sustained that objection.

Warren never objected on a prosecutorial misconduct basis or on an "unauthenticated evidence" basis. "A party may not add to or change his grounds for objections in the reviewing court." Treadway v. State, 924 N.E.2d 621, 631 (Ind. 2010). "Any ground not raised at trial is not available on appeal." Id. Consequently, those arguments are waived. His objection based on lack of ability to cross-examine was sustained. We cannot say that the trial court abused its discretion by admitting the slideshow at the sentencing hearing.

Moreover, even if the trial court abused its discretion by considering the slideshow, Warren has failed to demonstrate that his substantial rights were violated. Indiana Trial Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court

7

> inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

The slideshow discussed general information on stalking, traits of stalkers, types of stalkers, a timeline of Warren's activities against McKee and Palmer, and Warren's tendency to blame others and minimize or justify his own actions. Warren has not pointed out any portion of the slideshow that violated his substantial rights, and we presume that the trial court considered only evidence properly before it. Dumas, 803 N.E.2d at 1121. Any error in the admission of the slideshow was harmless.

## II. Consideration of Mitigators

Warren argues that the trial court should have considered his lack of a criminal history and his acceptance of responsibility as mitigators. A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. Rascoe v. State, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Anglemyer, 868 N.E.2d at 493.

The trial court here considered both Warren's lack of a criminal history and his acceptance of responsibility as mitigators. However, the trial court did not find either to be significant or clearly supported by the record. The trial court gave an extensive sentencing statement. The trial court found that Warren's lack of a criminal history was not a mitigator because he was constantly manipulating those around him. He continued harassing McKee and Palmer despite numerous court orders, discussions with police

8

officers, and incarceration. The trial court noted that Warren had "been criminal in [his] behavior for an extended period of time." Tr. p. 251.

As for his acceptance of responsibility, the trial court found that Warren had not genuinely accepted any responsibility and was not remorseful. Rather, it was evident from the recorded telephone calls from the jail that Warren was blaming others. The trial court found Warren's apology to be "one of the most insincere and manipulative acts I have ever witnessed in my life." Tr. p. 225. Despite Warren's argument, the trial court did consider the two proposed mitigators. The trial court merely found that neither was significant or clearly supported by the record.

### III. Credit Time

Warren argues that the trial court erred by failing to award credit for his time served. Indiana Code Section 35-38-3-2(b)(4) provides that a judgment of conviction must include "the amount of credit, including credit time earned, for time spent in confinement before sentencing." Because of confusion regarding Warren's incarceration for contempt in the dissolution proceedings, the trial court delayed awarding Warren credit for time served. The State was ordered to present evidence regarding the credit for time served within thirty days but apparently failed to do so. The trial court was notified of the issue, but could not correct the problem because it no longer had jurisdiction of the case, which was pending on appeal. See Ind. Appellate Rule 8.

On appeal, the State concedes that we should remand to the trial court for a calculation of Warren's credit for time served. Consequently, we remand for the trial court to calculate the appropriate credit for time served.

9

**Conclusion**

We affirm Warren's sentence for Class C felony stalking, Class D felony stalking, and Class D felony attempted inducement of obstruction of justice. However, we remand for the trial court to calculate Warren's credit for time served prior to his sentencing. We affirm and remand.

Affirmed and remanded.

NAJAM, J., and BAILEY, J., concur.

10