**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
May 23 2014, 10:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RONALD DEWAYNE THOMPSON, )
 )
 Appellant-Defendant, )
 )
 vs. ) No. 45A04-1310-CR-511
 )
STATE OF INDIANA, )
 )
 Appellee-Plaintiff. )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1212-FA-31

**May 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Ronald Dewayne Thompson was convicted after a jury trial of criminal confinement[1] as a Class C felony and sexual battery[2] as a Class C felony and was sentenced to four years executed in the Department of Correction. He appeals and raises the following restated issue for our review: whether the trial court abused its discretion when it denied Thompson's request for a mistrial.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In October 2012, Thompson began a relationship with S.M., and in November 2012, S.M. ended the relationship. On December 17, 2012, Thompson called S.M. more than three times and asked to talk with her. S.M. agreed to meet with Thompson that evening. Around ten o'clock that night, Thompson picked up S.M. in his car and drove her to his place of business in Merrillville, Indiana. After the two talked for twenty to thirty minutes, Thompson became upset with S.M. and started insulting her. S.M. attempted to leave, but Thompson prevented her from doing so. Thompson eventually allowed S.M. to leave, and she began to walk home.

Thompson followed her and offered to drive her home. S.M. agreed and got into Thompson's car. He drove back to his place of business and stated that he needed to retrieve his driver's license. When they arrived back at the office, Thompson did not leave the car to go get his license and, instead, began talking to S.M. again. S.M. protested and

---

[1] *See* Ind. Code § 35-42-3-3.

[2] *See* Ind. Code § 35-42-4-8.

told Thompson that she wanted to go home. Thompson became upset again and drove away from the building in the opposite direction of S.M.'s home. S.M. saw a bottle of water in the car, poured the water in Thompson's face, shifted the car into park, and tried to exit the car. As S.M. was trying to get out of the car, Thompson put the car back in drive and began to drive, dragging S.M. on the ground beside the car. S.M. let go of the car and attempted to run away from Thompson across a field. Thompson stopped his car, ran after S.M., and pinned her to the ground with his knees. While S.M. was pinned down, Thompson struck her multiple times in the face, asking her if she was "ready to die." *Tr.* at 60. S.M. struggled with Thompson and tried to get him to stop by biting, grabbing for a broken beer bottle, and falsely claiming she was pregnant with his child. *Id*. at 60-62.

Eventually, Thompson stopped hitting S.M. and allowed her to get up and go clean up at his office. When they returned to the office, Thompson instructed S.M. to place cushions from a couch on the ground and to remove her clothing. Thompson and S.M. then had sexual intercourse on the floor. Afterwards, Thompson drove S.M. to her home, and when she got upstairs, she called the police to report that she had been raped. S.M. was taken by ambulance to the hospital, where she was treated and examined. At that time, S.M.'s injuries included black eyes, heavy facial bruising, and a deep abrasion to her right knee. DNA recovered from S.M.'s body at the hospital matched Thompson's DNA.

On December 20, 2012, the State charged Thompson with Class A felony rape, Class C felony criminal confinement, Class C felony sexual battery, and Class A misdemeanor battery. A four-day jury trial was held on June 3-6, 2013. At trial, Detective George Fields of the Merrillville Police Department, who investigated the case, testified.

3

During his investigation, he took S.M's statement, searched Thompson's Merrillville office, and attempted to contact Thompson by calling him on the phone. On direct examination, the State asked Detective Fields the following questions:

Q:    Did you attempt to contact Mr. Thompson?
A:    I attempted to call him on his phone.
Q:    And how many times did you attempt to call him?
A:    At least two times.
Q:    Okay. Were you able to leave any messages for him to call you back?
A:    I did leave a message. I explained to him that I needed him to call me back because I needed his side of the story before I presented it –

*Tr.* at 157-58. Defense counsel objected and moved for a mistrial, noting that Thompson had the right to remain silent and arguing that the testimony impermissibly shifted the burden of proof to Thompson to prove his innocence. *Id.* at158. The trial court sustained the objection, instructed the State not to proceed with the line of questioning, and denied the motion for mistrial. Defense counsel did not request that the jury be admonished.

At the conclusion of the trial, the jury found Thompson guilty of criminal confinement, sexual battery, and battery, but did not return a verdict for the rape charge. The trial court took the verdicts under advisement. A second jury trial was held for Thompson's rape charge on August 12-15, 2013. The second jury found Thompson not guilty of rape, and the trial court entered judgment on Thompson's convictions for criminal confinement, sexual battery, and battery. At sentencing, the trial court vacated the battery conviction, stating that the conviction arose out of the same injuries as the sexual battery conviction. *Id.* at 349. The trial court sentenced Thompson to four years for the criminal confinement conviction and four years for the sexual battery conviction, with the sentences

4

to run concurrently with each other for a total of four years executed. Thompson now appeals.

## DISCUSSION AND DECISION

A mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation. *Hale v. State*, 875 N.E.2d 438, 443 (Ind. Ct. App. 2007), *trans. denied*. The decision of whether to grant or deny a motion for mistrial is committed to the sound discretion of the trial court and will be reversed only upon an abuse of that discretion. *Myers v. State*, 887 N.E.2d 170, 189 (Ind. Ct. App. 2008), *trans. denied*. The denial of a motion for mistrial will be reversed only upon a showing that the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.* The burden on appeal is upon the defendant to show that he was placed in grave peril by the denial of the mistrial motion. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Bassett v. State*, 895 N.E.2d 1201, 1208 (Ind. 2008), *cert. denied*, 556 U.S. 1171 (2009).

Thompson argues that the trial court erred in denying his request for a mistrial after Detective Fields testified as to Thompson's need to present his side of the story. He contends that he was placed in grave peril by the testimony because it impermissibly shifted the burden to him to prove his innocence. He asserts that the trial court should have granted his request for mistrial because the jury was misled as to the burden of proof in the case.

Initially, the State alleges that Thompson has waived his claim because he failed to ask for an admonishment. We disagree. It is well established that when an improper

5

statement is alleged to have been made, failure to request an admonishment or to move for mistrial results in waiver of the claim for appellate review. *Huls v. State*, 971 N.E.2d 739, 743 (Ind. Ct. App. 2012) (citing *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004)), *trans. denied*. Thompson's motion for mistrial sufficiently articulated to the trial court his challenge to the testimony. Thus, Thompson's claim is preserved for our review. *Cf. Dumas*, 803 N.E.2d at 1117 (finding that Dumas's claim of prosecutorial misconduct was waived because Dumas neither requested an admonishment nor moved for mistrial).

We, therefore, proceed to review the case on it merits. At trial, Detective Fields testified regarding what he did in his investigation of the case and how he proceeded. When asked if he contacted Thompson, Detective Fields stated that he had tried to call him at least two times and had left a message for Thompson explaining that the detective needed Thompson's side of the story before presenting the results of his investigation. *Tr*. at 157-58. Detective Fields's testimony did not imply to the jury that Thompson bore the burden of proof in the case; it merely related the steps that Detective Fields took in his investigation of the case. Detective Fields's testimony relayed that he left a message asking to hear Thompson's side of the story before presenting the results of the investigation; it did not imply that the jury needed to hear Thompson's side of the story or that he had any burden to explain or prove anything. We conclude that the testimony by Detective Fields did not shift the burden of proof to Thompson. Thompson has failed to show that he was placed in grave peril by the denial of the mistrial motion. The trial court did not abuse its discretion in denying Thomson's motion for mistrial. Affirmed.

MAY, J., and BAILEY, J., concur.

6